No. 1,804.

## The Lake Erie and Western Railroad Co. v. Power.

RAILROAD.—*Agreement to Build and Maintain Fences Along Right-of-Way.—Damages to Crops.*— Where a railroad company, in consideration of a grant of right-of-way, agrees to build and maintain a good fence along such right-of-way, it will be liable in damages for loss of crops, occasioned by its failure to maintain such right-of-way fence.

SAME.—*Landlord and Tenant.—Right of Action.*—A covenant to maintain a fence along the right-of-way of a railroad company runs with the land, and a tenant from year to year may recover for the breach of the covenant to the extent that he has been damaged in loss of crops by the breach thereof.

From the Rush Circuit Court.

*W. E. Hackedorn, J. B. Cockrum, G. H. Punteney* and *H. E. Barrett,* for appellant.

*B. L. Smith* and *C. Cambern,* for appellee.

DAVIS, J.—Eveline Murray owns, and has owned since 1874, and perhaps longer, eighty acres of farm land in Rush county, Indiana, the possession of which appellee has held continuously, under a parol lease as tenant from year to year, and for which he has always paid an annual cash rent since 1874.

In 1881 said Eveline Murray granted the New Castle & Rushville Railroad, its successors and assigns, the right-of-way over and across said real estate, in consideration of an agreement by the company therein contained "to build and maintain a good fence on the right-of-way herein conveyed immediately on the completion of the railroad."

In 1886, the New Castle and Rushville Railroad Company and the Fort Wayne, Cincinnati and Louisville Railroad Company were consolidated under the name of the Fort Wayne, Cincinnati & Louisville Railroad Company.

In 1890 the Fort Wayne, Cincinnati & Louisville Railroad Company sold and conveyed all its properties and rights to the Lake Erie & Western Railroad Company.

The railroad was constructed across the lands in question in 1881, and about the same time the railroad company built a four-wire barb-wire fence along the right-of-way through the land. The first winter after the fence was built, the water raised about to the top wire of the fence, a distance of about twenty-five or thirty rods along the fence, and the water froze over, and when the water flowed away the ice settled and tore the wire from the fence, except not more than two wires.

That part of the fence which was in part torn down, as above indicated, never was repaired by the company, and in 1892 and 1894 hogs entered said premises through such defective part of the fence and destroyed appellee's crops.

The case was tried in the court below by the Hon. John D. Miller, formerly one of the judges of the Supreme Court, now the judge of the Rush Circuit Court, who found for appellee, and assessed his damages at $140.00, for which judgment was rendered against appellant.

The theory upon which the action is founded, is that appellee is entitled to recover the damages to his crops caused by appellant's failure to maintain the fence. In other words, the contention of counsel for appellee is that the same rule applies in behalf of appellee as tenant as would have applied in behalf of

the owner of the field for damages to her own crops, if any had been sustained by her by reason of appellant's failure to maintain the fence.

Counsel for appellant insist that "if appellee has any remedy for the damage complained of, it is not the one pursued here for two reasons:

"1st.   He cannot occupy the position of his lessor in relation to her covenant in the deed, unless he obtain from her the fee in the greater estate, and that, he cannot obtain by a simple lease.

"2d.   Neither Eveline Murray, nor anyone claiming under her, could maintain an action for damage to the crop by reason of a failure to comply with the covenant in the deed, under the allegation of the complaint in this cause."

In support of the second proposition, the argument of counsel is that unless the land-owner in such case is kept from building or maintaining the fence, by the promise of the railroad company that it will build or maintain the fence, he cannot recover for damages to crops on account of a failure to build or maintain the fence in pursuance of the terms of the contract.   In other words, that the duty rests on the land-owner to protect his crops by building or maintaining the fence; and that if he has a right of action, it is for the reasonable cost or value of building or maintaining the fence; and that he cannot, except under the circumstances above suggested, recover damages to his crops occasioned by the failure of the company to build or maintain the fence.

We are not favorably impressed with this view of the law.   In such cases, the value of the crops destroyed by reason of the failure of the company to build or maintain the fence in compliance with the terms of the contract may, in our opinion, be recovered.   *Louisville, etc., R. R. Co.* v. *Sumner*, 106 Ind. 55.

The duty of the company to build and maintain the fence was a continuing one running with the land. *Toledo, etc., R. R. Co.* v. *Burgan,* 9 Ind. App. 604. In such cases, if the failure of the company to build or maintain the fence results in the loss of crops or pasture by the owner of the land, such loss is an element of damages for which the owner may recover. *Toledo, etc., R. R. Co.* v. *Cosand,* 6 Ind. App. 222.

In the Sumner case, *supra,* the Supreme Court held that the rule for the assessment of damages in such cases was the same as in cases where the duty to fence was imposed by statute, and cited with approval *Donald* v. *St. Louis, etc., R. W. Co.,* 44 Ia. 157, wherein that court held that the measure of damages was the value of the crop destroyed. Assuming that the land owner in such cases can not recover damages which he might have prevented by reasonable care *(Raridon* v. *Central Iowa R. W. Co.,* 19 Am. and Eng. R. R. Cas. 615), it is not shown, by the evidence in this case, that appellee might have prevented the loss, for which he seeks to recover in this action, by reasonable care.

The serious question is, whether the appellee is, under the circumstances disclosed by the record, entitled to recover damages for loss of crops occasioned by the failure of the company to maintain the right-of-way fence.

In the Burgan case, *supra,* this court assumed that the tenant had the same right of action, if any, that the land-owner would have had under the same circumstances. See *Thomas* v. *Hannibal, etc., R. W. Co.,* 82 Mo. 538.

In that case, however, it was conceded that the tenant could recover if the landlord could have recovered under the same circumstances. In this case the owner of the fee was not in possession of the land when the right-of-way contract with the railroad company was

made. The appellee, as tenant from year to year, has always and continuously had the possession of the farm. Does the covenant to maintain the fence run with the land, under such circumstances, in favor of the tenant?

In *Hoyleman* v. *K. & O. R. W. Co.*, 33 W. Va. 489, it was held, where at the date of the lease the fences were in bad condition, the tenant could not maintain an action for damages on such contract. It has also been held that restrictions in a deed, which are covenants running with the land, are effective against the tenant. *Sutton* v. *Head*, 86 Ky. 156.

The appellee is not a grantee of the fee. The title to the land has not vested in him. He has only a leasehold interest—the right to exclusive use, enjoyment and possession of the farm. This interest he had when the right-of-way contract was entered into, and he has continuously held and enjoyed it ever since.

The lease under which appellee holds the farm is, both in contemplation of law and in fact, a conveyance of the premises to him as a tenant from year to year. The covenant of appellant runs with the land; and in our opinion the appellee, as assignee thereof, is entitled to recover in this action for the breach of the covenant to the extent that he has been damaged by reason of the failure of appellant to maintain the fence. Woodfall Landlord and Tenant, pages 2, 148 and 149. See also *Sherman* v. *Fall River Iron Works Co.*, 79 Am. Dec. 799; *Suydam* v. *Jones*, 25 Am. Dec. 552. The authorities cited are not decisive of the question here involved.

The agreement to maintain the fence is, as we have seen, a covenant running with the land. This covenant is in the special interest of the possessory title to the land. The appellee is the assignee of this title or interest. He was such owner when the breach oc-

curred and has sustained the damages by reason of the failure of the appellant to repair the fence. The landlord has no interest in the crops destroyed and could maintain no action for such damages. The appellee has no right of action against his landlord.

Although the question was not discussed in the Burgan case, we are disposed, under the circumstances of this case, to adhere to the rule there applied, and therefore we are of the opinion that no good reason has been shown for the reversal of the judgment of the trial court.

Judgment affirmed.

Filed May 5, 1896.