105 N.J. Super. 14 (1969)
250 A.2d 792
ALEXANDER'S DEPARTMENT STORES OF NEW JERSEY, INC., A NEW JERSEY CORPORATION, AND EXANDER PROPERTIES, INC., A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
ARNOLD CONSTABLE CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT. ARNOLD CONSTABLE CORPORATION, A CORPORATION, PLAINTIFF,
v.
ESSEX GREEN SHOPPING PLAZA ASSOCIATES, ESSEX GREEN, INC., SOL G. ATLAS, WILLIAM DOELGER, PROSPECT ACRES, INC. AND PLEASANT ACRES COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 28, 1969.
*18 Mr. Morris M. Schnitzer for Alexander's Department Stores of New Jersey, Inc., Exander Properties, Inc., Essex Green, Inc., Essex Green Shopping Plaza Associates, Sol G. Atlas, Prospect Acres, Inc. and Pleasant Acres Company (Messrs. Kasen, Schnitzer & Kraemer, attorneys).
Mr. Murry D. Brochin for Arnold Constable Corporation (Messrs. Lowenstein, Sandler, Brochin & Kohl, attorneys).
MINTZ, J.S.C.
This matter is before the court on Arnold Constable Corporation's ("Arnold Constable") motion for summary judgment. In the first-captioned proceeding Alexander's Department Stores of New Jersey, Inc. ("Alexander's") and its subsidiary, Exander Properties, Inc. ("Exander"), seek a declaratory judgment that certain restrictions in Arnold Constable's recorded lease of premises in the Essex Green Shopping Plaza in West Orange, New Jersey, do not bar Alexander's from operating a proposed department store on properties adjoining the Arnold Constable store. In its answer Arnold Constable alleges that the operation of an Alexander's store on said properties would be in violation of its lease and counterclaims for an injunction to prevent the construction and operation of an Alexander's department store on all three parcels of land involved in this litigation. Although not specifically set forth in its answer, Arnold Constable also urges that it is entitled to specifically enforce restrictive covenants in deeds covering two of the three contiguous parcels upon which Alexander's *19 proposes to erect a department store. Since this issue was presented and argued without objection, the answer will be deemed amended to include the same. In the second-captioned action Arnold Constable seeks to hold defendants liable for damages, including legal fees, arising out of the alleged breach of the leasehold obligations to Arnold Constable. Defendant Doelger moved for summary judgment and his motion was granted.
In 1956 Ridge Holding Company conveyed three contiguous parcels of land in West Orange to three separate entities, namely, Essex Green, Inc., Pleasant Acres Company and Prospect Acres, Inc. The three deeds were each dated March 29, 1956 and were consecutively recorded in the Essex County Register's Office on April 30, 1956. Essex Green, Inc. acquired title to a tract consisting of 48.08 acres fronting on the northwesterly side of Prospect Avenue in West Orange. An adjoining parcel to the north was acquired by Pleasant Acres Company, and an adjacent parcel to the north and west of the Essex Green, Inc. property was acquired by Prospect Acres, Inc. The deeds to the Pleasant Acres Company and Prospect Acres, Inc. tracts each contained a restrictive covenant which reads as follows:
"The party of the second part, in accepting this deed, does for itself, its successors and assigns covenant and agree to and with the party of the first part, its successors and assigns, that no portion of the above described premises, nor any building or structure now or hereafter erected thereon shall be used for a shopping center or for a store or stores. This covenant shall attach to and run with the lands above described and this covenant is expressly made for the benefit of said lands of the party of the first part consisting of 48.08 acres fronting on the northwesterly line of Prospect Avenue, West Orange, New Jersey and to be conveyed by deed of even date herewith by the party of the first part to Essex Green, Inc., a corporation of New Jersey."
In 1959 Essex Green, Inc. constructed the Essex Green Shopping Plaza on part of the land acquired from Ridge Holding Company. On September 8, 1959 Arnold Constable as tenant, entered into a lease with Essex Green, Inc. as *20 landlord, for a portion of the shopping center premises for use as a department store and/or specialty store. The lease was executed on behalf of Essex Green, Inc. by its president, Sol G Atlas, then a leading developer of shopping centers. The lease is for a term of 25 years with three 10-year renewal options and a rental based upon a percentage of the tenant's gross annual volume of business. However, after the first five years of the term there is a guaranteed minimum annual rental based upon the average rent paid during the first five years.
Paragraph 27 (b) of the lease provides that:
"Landlord and Sol G. Atlas and William Doelger shall not directly or indirectly construct or own or operate or control or have a controlling interest in any shopping center and further agree not to lease to any of the stores as shown in Paragraph 51 herein within a radius of five (5) miles from the premises during the term of this lease or any extension or renewal thereof."
Paragraph 51 of the lease states that:
"Provided the Tenant is not in default of the payment of the fixed annual minimum rental, Landlord will not, without the prior written consent of Tenant, lease or permit the occupancy of any portion of the Shopping Center for any store to be used, occupied, operated or managed, directly or indirectly, by the following persons, firms or corporations, or any parent, subsidiary or affiliate thereof: S. Klein of Union Square, New York, N.Y., May's of Fulton Street, Brooklyn, N.Y., Ohrbach's of 34th Street, New York, N.Y., Lane's of 14th Street, New York, N.Y., Alexander's of Fordham Road and Grand Concourse, Bronx, N.Y., E.J. Korvette of New York, N.Y., Master's, Inc. of New York, N.Y., Strauss Stores Corp., Modell's, Vim or Davega of New York, Inc., or any other discount-house type of retail business. Landlord shall not without Tenant's prior consent lease or permit the occupancy of any portion of the Shopping Center by any competing department or specialty store."
A "short form" of lease including the foregoing restrictions was duly recorded in the Essex County Register's Office and constitutes constructive notice to Alexander's and Exander. Cwiakala v. Giunta, 23 N.J. Super. 261 (Ch. Div. 1952).
In 1961 Essex Green, Inc. sold a 40-acre tract upon which the shopping center is constructed to Essex Green Freeway, *21 Inc., which in turn conveyed it to Essex Green Property Plaza Associates ("Associates") the present owner. Essex Green, Inc. retained title to an eight-acre tract north of and immediately adjacent to this tract. Approximately one-half an acre of this parcel has been taken by the State for highway purposes.
On October 21, 1965 Essex Green, Inc., Prospect Acres, Inc. and Pleasant Acres Company entered into a contract with Exander to convey their contiguous lands to Exander. It is upon this assembled tract that Exander proposes to erect an Alexander's Department Store with parking facilities. On November 30, 1965 Associates and Essex Green, Inc. released the covenant prohibiting the use of the Prospect Acres, Inc. and Pleasant Acres Company tracts for a shopping center or store. Associates also entered into an agreement with Exander wherein it granted Exander, its successors and assigns a perpetual easement over the parking facilities now in being or to come into being on its shopping center property. Apparently Associates has received a reciprocal easement over the proposed Alexander's parking area and the plan is to integrate the Alexander's store with the Essex Green Shopping Plaza. On May 27, 1966, by a single common deed from Essex Green, Inc., Prospect Acres, Inc. and Pleasant Acres Company, the aforesaid three properties were conveyed to Exander.
In view of the fact that Exander has acquired title to the three tracts from three separate entities, it is necessary in the first instance to deal separately with the applicability of the lease restrictions to the 7 1/2-acre tract. This tract, acquired by Exander from Essex Green, Inc., immediately adjoins the present shopping center and was originally a part of the 48-acre tract owned by Essex Green, Inc. when it entered into the lease arrangement with Arnold Constable. Attached to the lease agreement is a map entitled "Essex Green Shopping Plaza." On this map the original eight-acre tract, now reduced to 7 1/2 acres, is labeled "For Future *22 Construction." Paragraph 28(b) of the Arnold Constable lease states:
"Landlord hereby reserves the right at any time to construct other buildings or improvements in the Essex Green Shopping Plaza or to make alterations or additions to buildings or improvements in the Essex Green Shopping Plaza, as shown on the attached Exhibit `D', except that Landlord shall not (subject to paragraph 51) rent to any tenant who will occupy retail selling space of 25,000 square feet or more in the Shopping Center without first obtaining Tenant's written consent, which consent shall not be unreasonably withheld."
Clearly, the parties to the lease contemplated the expansion of the shopping center to include the area on the map attached to the lease designated "For Future Construction," and intended that paragraph 51 of the lease apply to the area so specified. See Daitch Crystal Dairies, Inc. v. Neisloss, 16 Misc.2d 504, 185 N.Y.S.2d 188 (Sup. Ct. 1959), affirmed 8 A.D.2d 965, 190 N.Y.S.2d 737 (App. Div. 1959), affirmed on opinion below 8 N.Y.2d 723, 201 N.Y.S.2d 101, 167 N.E.2d 643 (Ct. App. 1960).
Alexander's argues that while the 7 1/2-acre tract may have been a part of the proposed shopping center as originally contemplated in 1959 when the Arnold Constable lease was signed, the shopping center has not been expanded and, in fact, there has been a severance in the ownership of the original 48-acre tract. It is therefore urged that the 7 1/2-acre parcel is freed from the restrictive effect of paragraph 51 of the lease. I find no merit in this argument. Arnold Constable did not consent to a release of the restrictions imposed on the 7 1/2-acre tract by the leasehold agreement and certainly such release cannot be effected unilaterally.
Assuming arguendo that the proposed Alexander's Department Store will not be erected on the shopping center but on a site immediately adjacent to it, the conveyance of the 7 1/2-acre tract from Essex Green, Inc. to Exander is violative of paragraph 27(b) of the Arnold Constable lease which prohibits the landlord from leasing to any of the *23 stores designated in paragraph 51 within a radius of five miles from the demised premises. Although Essex Green, Inc. has conveyed the land upon which the shopping center is constructed to Associates and therefore is no longer Arnold Constable's landlord, it nevertheless is bound by the restrictive covenants in the lease which it executed. Paragraph 48 provides that the terms and provisions of the lease shall be binding upon and inure to the benefit of the successors and assigns of the landlord and tenant, and that no landlord shall, by reason of parting with title, be relieved of any obligations accrued or conditions created up to the time of parting with title.
In Renee Cleaners, Inc. v. Good Deal, etc., N.J., 89 N.J. Super. 186 (App. Div. 1965), plaintiff, a shopping center tenant, instituted an action against its landlord for breach of covenant against leasing premises controlled by the landlord within 500 feet of the demised premises. The court held that the covenant against leasing was violated by a sale of an adjoining property to an unrelated party who subsequently leased it to a competing dry cleaning business. The court there stated that the landlord could not circumvent its obligation by selling an adjacent property lying within the restricted area without making provision for continued compliance with its obligation not to lease to a competing business within a distance of 500 feet of the plaintiff's leased premises. It said:
"* * * Renee bargained for and became entitled to not only the landlord's agreement not to lease to a competing business, but freedom from competition within the prescribed area. The clear purport of the covenant was Renee's freedom for the duration of the lease from the financial hazard of competition to the extent that such protection could be provided by defendants." (at p. 195)
Cf. Cragmere Holding Corporation v. Socony-Mobil Oil Co., 65 N.J. Super. 322 (App. Div. 1961).
It is argued that under the agreement New York law governs the construction of the lease. If this be so, the same result is reached. A covenant against leasing is violated *24 by any form of the use of the premises for the prohibited purpose. In Goldberg v. Siegel, 182 Misc. 1068, 47 N.Y.S.2d 678 (Sup. Ct. 1944), tenants sought an injunction contending that a covenant in their written lease protected them against competing tenants in the same building selling merchandise which the plaintiffs sell. The court there said:
"The fact that defendants are not renting the store but are themselves using it is no escape from the inhibitions of the covenant. To tolerate such an avoidance of the effects of plain language would be to invite nullification of honest agreements made among men. * * *" (at p. 681)
I conclude that under paragraph 51 of the lease, or alternatively under paragraph 27(b), Alexander's is precluded from occupying any part of the 7 1/2-acre tract. This is what the parties bargained for, and any other construction would do violence to the terms of their carefully drawn agreement. As observed in Barr and Sons, Inc. v. Cherry Hill Center, Inc., 90 N.J. Super. 358 (App. Div. 1966):
"The covenant in question must be construed in the light of both the circumstances under which it was written and the purpose, express or implied, of the parties in effecting their arrangements, in order that we may attribute to their language a rational meaning consonant with that purpose." (at p. 370)
It is further noted that the easement affording Alexander's the use of the present shopping center parking facilities is also in contravention of the leasehold agreement. Paragraph 51(b) of the lease expressly precludes the occupancy of any portion of the shopping center by Alexander's or by any competing department or specialty store.
There remains the question whether Alexander's may be prevented from erecting a store on the properties formerly held by Prospect Acres, Inc. and Pleasant Acres Company. In paragraph 27(b) landlord agreed not to lease any site *25 to Alexander's within a five-mile radius of the Essex Green Shopping Plaza. Alexander's argues that it is precluded only if it is located in a shopping center within the proscribed area but that the restriction does not encompass an Alexander's which is not a part of a shopping center. This construction is not accurate. It appears from a reading of paragraph 27 in its entirety that the parties intended that Alexander's be excluded from any property controlled by landlord, Atlas or Doelger within the five-mile radius, whether or not said property be part of a shopping center.
It necessarily follows that when Associates (the present landlord) released the restrictions against retail use from the Prospect Acres, Inc. and Pleasant Acres Company tracts, it violated paragraph 27(b) of its lease with Arnold Constable. I think that the parties to the lease intended that the landlord should not release the restrictions on the adjoining tracts and thereby render them available to Alexander's. Clearly, if Associates owned these two tracts, it could not lease or sell them for use by Alexander's. It should not be permitted to accomplish indirectly through a release that which it could not do directly. The lease will be given the effect which the parties as fair and reasonable men presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto. Renee Cleaners, Inc. v. Good Deal, etc. N.J., supra. As observed in Daitch Crystal Dairies, Inc. v. Neisloss, supra, there is necessarily a mutual covenant, whether expressed or not, of extreme good faith by each party, both as to the interpretation and as to the performance of the lease agreement. To the same effect, see Parker v. Lewis Grocer Company, 246 Miss. 873, 153 So.2d 261 (Sup. Ct. 1963). Accordingly, paragraph 27(b) will be construed so as to prohibit such releases.
Alexander's further urges that paragraph 51 is against public policy and in restraint of trade. The effect of this provision is to exclude from the shopping center 11 specified retailers, including Alexander's. Some of the named *26 retailers are noncompetitors of Arnold Constable. Additionally, "any other discount-house type of retail business" or competing department or specialty store is prevented from locating in the shopping center. It is argued that the total exclusion of retail discount stores should not be countenanced.
Apparently Arnold Constable was interested in locating in a "quality type" shopping center where it would also be free from competition. Presumably it was of the view that noncompetitive discount operations would not attract to the shopping center the type of clientele that patronizes Arnold Constable. The landlord concurred. There is no public policy that militates against the parties incorporating such a provision in the lease. Nor is there any restraint of trade effected through the exclusion of the discount type of store. They are free to locate anywhere on any property not controlled, directly or indirectly, by landlord, Atlas or Doelger.
It is also contended that paragraph 27(b), by incorporating the restrictions against leasing to noncompetitors as set forth in paragraph 51, constitutes an invalid restraint of trade. For example, it is urged that the effect is to prevent landlord, Atlas and Doelger from leasing to Vim or Davega, noncompetitors of Arnold Constable within a radius of five miles. As previously stated, all noncompetitors are free to locate within the five-mile radius, provided they do not lease from landlord, Atlas or Doelger.
Assuming, arguendo, that the restrictive covenants are questionable as applied to other discounters at other locations, the restrictions are enforceable against Alexander's in view of paragraph 47 of the lease which states:
"If any term covenant, condition or provision of this lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term, covenant, condition and provision of this lease shall be valid and be enforced to the fullest extent permitted by law."
*27 The restrictions in the Arnold Constable lease prohibiting competition by Alexander's are reasonable in area and duration. In commercial settings such as seller and purchaser, as distinguished from employer-employee contracts containing territorial restrictions against post-employment competition, restrictions in excess of five miles have been consistently upheld. See Ellerman v. Chicago Junction Railways & Co., 49 N.J. Eq. 217 (Ch. 1891) (covenant by seller not to carry on a competing business within 200 miles upheld); Nachamkis v. Goldsmith, 101 N.J.L. 356 (E. & A. 1925) (upholding covenant by seller of a cracker and biscuit business not to carry on a competing business within ten miles); Schwartz v. Van Der Plate & Co., Inc., 132 N.J. Eq. 132 (Ch. 1942) (covenant by seller of coal business not to compete within a radius of five miles upheld); DeBello v. Stackliff, 149 N.Y.S.2d 61 (Sup. Ct. 1956) (covenant by seller of a photography business not to compete within 50 miles upheld); Broadbrooks v. Tolles, 114 App. Div. 646, 99 N.Y.S. 996 (App. Div. 1906) (covenant by vendor of a lumber business not to compete within 25 miles found valid); Zellner v. Dell'Orso, 95 N.Y.S.2d 858 (Sup. Ct. 1950), affirmed w.o. 278 App. Div. 577, 102 N.Y.S.2d 457 (App. Div. 1951) (covenant by seller of a drycleaning business not to compete within five miles enforced).
The covenant prohibiting competition by Alexander's during the term of the lease is reasonable in time. Such covenants in leases, co-extensive with the lease term, have been upheld without a suggestion that the duration was unreasonable. Daitch Crystal Dairies, Inc. v. Neisloss, Cragmere Holding Corporation v. Socony-Mobil Oil Co., and Renee Cleaners, Inc. v. Good Deal, Etc., N.J., supra.
The reasonableness of paragraph 27(b) is especially evident by two considerations. In paragraph 27(a) Arnold Constable agrees not to operate a competing store within a five-mile radius during the term of the lease. Thus, the landlord who has a percentage lease is assured that the tenant will not divert its business within a radius likely to affect *28 his rental income. Reciprocally, in paragraph 27(b) the landlord, Atlas and Doelger covenant not to lease to a competing store within such radius. Secondly, the restriction does not in any manner preclude Alexander's from establishing such a store within five miles of Arnold Constable, but simply prevents the landlord, Atlas or Doelger from participating in any such establishment.
Independently of the restrictions set forth in the lease, Arnold Constable urges that the restrictive covenant in the respective deeds from Ridge Holding Company to Prospect Acres, Inc. and Pleasant Acres Company dated March 29, 1956, inures to its benefit and prohibits the use of those two tracts for an Alexander's store. As earlier noted, each of the restrictive covenants runs with the land, forbids the use of the respective lands for a shopping center or store, and is expressly made for the benefit of the 48.08-acre tract acquired by Essex Green, Inc.
A restrictive covenant inserted in a deed for the benefit of the dominant estate is "appurtenant" to the lands to be benefited, Hemsley v. Marlborough House Co., 68 N.J. Eq. 596 (E. & A. 1905); Coudert v. Sayre, 46 N.J. Eq. 386 (Ch. Div. 1890); see Packanack Lake, etc. v. Alexander D. Doig Dev. Co., 72 N.J. Super. 360, 366 (Ch. Div. 1962), and the benefit thereby created passes with the lands to all subsequent grantees of the covenantee. Sayre v. Coudert, supra. Arnold Constable is a lessee from a covenantee of a part of the lands benefited by the restrictive covenant. In the lease the landlord, Essex Green, Inc., agreed that Arnold Constable might "peaceably and quietly have, hold, occupy and enjoy the demised premises and all the appurtenances thereof * * *" for a term of 55 years, including renewals (emphasis added). The issue thus presented is whether Arnold Constable as a tenant has standing to enforce the restrictive covenant in each of the aforementioned deeds.
*29 There is considerable secondary authority to support Arnold Constable's position. The rule is stated as follows in 2 American Law of Property (1952 ed.) § 9.20, at p. 391.
"* * * where the covenantee creates a new and lesser estate in the benefited land, such as a life estate or leasehold estate, and retains a reversion in himself, a question arises as to whether there is a sufficient succession of estate to pass the benefit to the life tenant or lessee. As previously pointed out, the burden of a covenant will not pass where the covenantor creates a new and lesser estate out of his burdened land so as to retain a reversion for himself. But in the case of the benefit as distinguished from the burden, the courts permit the life tenant or lessee of the covenantee to enforce the benefit. In these cases the courts proceed on the theory that the benefit of a covenant is primarily attached to the possession of the covenantee's estate, and that when he has transferred this possession by creating a lesser possessory estate, the benefit should be treated as temporarily passing with the possessory interest to the life tenant or lessee." (Emphasis added)
The American Law Institute's Restatement of the Law of Property is to the same effect. Comment (c) under section 547 states:
"The concept of identification, upon which the running of both the burden and the benefit of promises respecting the use of land is based, presupposes a succession to an interest in the land with which the promises run. Historically, such a succession meant a succession to the interest of the predecessor in that land. This historical rule is still applicable in the case of the running of the burden (see § 535). It is no longer true with respect to the running of the benefit. The benefit will run with any part of the interest of the beneficiary of the promise if the part succeeded to is of such a character that performance of the promise will be of benefit to the owner of it."
See also to same effect 3 Tiffany, Law of Real Property, § 865 (1939).
If Arnold Constable is entitled to the benefit of the restrictive covenants in the Ridge Holding Company deeds, then the release from Essex Green, Inc. and Associates could not effectively release Arnold Constable's interest in and right to enforce the covenant. As observed in Coudert v. Sayre, supra, "One person is without the least power or *30 capacity, in the absence of a delegation of power, to release or change the rights of another in land." (at p. 396).
The rule is stated in 2 American Law of Property (1952 ed.) § 9.23, at p. 399:
"Any owner of the benefited land has the power during the period of his ownership to extinguish the benefit in respect to his land by executing a release to the burdened landowner. Such a release will extinguish the covenant only in respect to the estate of the releasor; and where a covenant `touches and concerns' several tracts of land so that the benefit attaches to other lots, the release by one lot owner can extinguish the benefit only as to his lot and in no way affects the rights of other owners of benefited lots. * * *"
The American Law Institute's Restatement of the Law of Property, § 556, states, "The obligation arising out of a promise respecting the use of land can be extinguished as between any person subject to the obligation and any person entitled to enforce it by a release given by the latter person to the former." Comment (f) to § 556 states, "There may be many beneficiaries of a promise respecting the use of land (see § 528, Comment b). Each beneficiary, however, owns his interest in the promise independently of the others. Consequently a release by one does not affect the rights of the others."
Research has failed to uncover any decisional authority precisely in point. However, a somewhat analogous situation was presented in Johnson v. Robertson, 156 Iowa 64, 135 N.W. 585 (Sup. Ct. 1912). There the court held that a tenant for years occupying a building in a city block may enforce a building restriction which precluded the erection of any building nearer than a stated distance from the lot line. The court found that the restrictions inserted in the deeds were for the reciprocal benefit of all the lot owners on the same street. It further determined that the building restrictions created equitable easements or servitudes which may be enforced by anyone interested in the property, and that a tenant who is entitled to the benefit of the easement may bring a suit in equity to enjoin threatened interference *31 with that easement. The court also stated in the course of its opinion that a landlord, having leased the property, cannot after the execution of the lease deprive his lessee of the benefits of the covenants. See also Brockmeyer v. Sanitary Drainage District of Chicago, 118 Ill. App. 49 (App. Ct. 1904); Lake Erie & W.R. Co. v. Power, 15 Ind. App. 179, 43 N.E. 959 (App. Div. 1896); Mine Hill & Schuylkill Haven Railroad Co. v. Lippincott, 86 Pa. 468 (Sup. Ct. 1878).
Arnold Constable is a major long-term tenant in the shopping center. The deed restrictions imposed on the adjoining parcels of land formerly owned by Prospect Acres, Inc. and Pleasant Acres Company are appurtenant to the land occupied by Arnold Constable and inure to its benefit. Arnold Constable alleges that it will be injured if Alexander's operates a department store on the adjoining tracts. It should not be burdened with speculating upon the long-term effect that a competitive Alexander's Department Store will have on its business. Accordingly, the release of such deed restrictions by Essex Green, Inc. and Associates will not extinguish Arnold Constable's right to enforce the covenants.
On the facts presented Arnold Constable is entitled to injunctive relief against the use of all three tracts in question by Alexander's because such use would be violative of the restrictions set forth in its lease. Additionally, it is entitled to an injunction against use of the Prospect Acres, Inc. and Pleasant Acres Company tracts for use by Alexander's since such proposed use would be violative of the restrictive covenants contained in the respective deeds to said parcels of land.
Essex Green, Inc. proposes to dedicate a 50-foot right of way that will afford access to Rooney Circle for its remaining landlocked acreage west of the shopping center as well as for the 7 1/2-acre tract and the former Pleasant Acres Company and Prospect Acres, Inc. tracts. It clearly has the right to make such dedication. In view of the ruling that *32 none of the three tracts may be occupied by Alexander's, the issue as to whether or not the use of this 50-foot right of way by Alexander's would constitute a violation of paragraph 51 of the lease is rendered moot.
Arnold Constable is not entitled to summary judgment in its action for damages, including legal fees. Apparently the claim for damages was offered as an alternative in the event injunctive relief was denied. Since injunctive relief is granted, the only remaining claim for damages is counsel fees. The rule is stated in Cohen v. Fair Lawn Dairies, Inc., 86 N.J. Super. 206 (App. Div. 1965), affirmed 44 N.J. 450 (1965), where the Appellate Division held:
"It is the general rule that in the absence of statute, rule of court or contract one may not recover his legal expenses, whether for compensation of attorneys or otherwise, as damages for breach of contract, in an action for such breach." (at p. 212)
See also Textileather Corp. v. American Mutual Liab. Ins. Co., 110 N.J.L. 483, 485-486 (E. & A. 1933). There is no provision in the Arnold Constable lease which makes counsel fees a compensable item in an action on the lease.
Our court rules embrace the view that sound judicial administration will best be advanced by having each litigant bear his own counsel fee except in those few situations specially designated in R.R. 4:55-7. Gerhardt v. Continental Ins. Cos., 48 N.J. 291 (1966). Arnold Constable correctly concedes that it is not entitled to recover counsel fees against Alexander's or Exander in the action instituted by them. It argues, however, that in the related proceeding it is entitled to litigation expenses as an item of damages flowing from defendants' breach of contract. As already noted, the only damages suffered by Arnold Constable are expenses of litigation. It is settled law that attorneys' fees are not cognizable as an item of damage in the same case in which they are incurred. Liebeskind v. Metal Frame Aquarium Co., 58 N.J. Super. 504 (App. Div. 1959). Cf. Verhagen v. Platt, 1 N.J. 85 (1948).