278 N.J. Super. 419 (1995)
651 A.2d 476
JAMES COX, PLAINTIFF-RESPONDENT,
v.
BETTY SIMON, TRUSTEE U.D.T.; J & M LAND COMPANY; HERMAN ZELL, DEFENDANTS. RICHARD SIMON, GRANTOR AND ASSIGNEE OF BETTY SIMON, TRUSTEE U.D.T., DEFENDANT-THIRD-PARTY PLAINTIFF-APPELLANT,
v.
DR. JOHN F. ZIMMERMAN, JR., JOHN F. ZIMMERMAN, SR., AND PATRICIA ZIMMERMAN, HIS WIFE, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1994.
Decided January 5, 1995.
*422 Before Judges SKILLMAN, WALLACE and KLEINER.
Keith A. Bonchi argued the cause for appellant (Goldenberg, Mackler & Sayegh, attorneys; Mr. Bonchi, of counsel and on the brief).
John J. Zarych argued the cause for respondent James Cox.
The opinion of the court was delivered by KLEINER, J.A.D.
On March 9, 1990, Dr. John Zimmerman, a chiropractor, entered into a written lease for premises within the Leeds Point Shoppes in Galloway Township, Atlantic County, for a three-year term commencing April 1, 1990. The lease provided the tenant with two options to renew, each for a three-year period, at the original monthly rental but subject to a cost of living rent adjustment calculable in accordance with a formula set forth within the lease. The lease contained a unique restrictive covenant clause which provided in part that for a period of three years after the lease term ended, the tenant could not engage in the practice of chiropractic within a two mile radius of the demised premises.
In this appeal by the landlord covenantee Richard Simon, as assignee of Betty Simon, we address an issue of first impression in New Jersey. Is a restrictive covenant within a commercial lease which seeks to limit geographically and temporally the tenant's freedom to relocate at the conclusion of the lease enforceable? The Chancery Division, on a motion for summary judgment, declared the restrictive covenant clause unenforceable. Additionally, the court dismissed defendant Simon's counterclaim which alleged malicious interference with contract and tortious interference with economic advantage. We are constrained to reverse both decisions.
Defendant Richard Simon is the owner of the Leeds Point Shoppes, a strip mall situated in Galloway Township, Atlantic *423 County. Defendant utilizes the services of codefendants, J & M Land Company and its vice president Herman Zell, to negotiate all leases and to manage the mall.
Prior to April 1, 1990, third-party defendant Dr. John F. Zimmerman, Jr., a licensed chiropractor, approached Zell and inquired about leasing a mall store for his use as a professional office. Based upon the square footage of an available store, Zell advised Zimmerman that the rent would be $1,200 per month. Zimmerman indicated he was new to the area and was just beginning his practice. Through negotiations, Zell offered Zimmerman a three year lease. As an incentive, the offer provided rental for the first six months at $950 per month, at $1,325 per month for the next twelve months, and at $1,200 per month during the balance of the term. The lease as drafted contained two options to renew, each for a period of three years at the same base rent of $1,200, but subject to a rent increase at the commencement of each option period utilizing a cost of living index formula.
Based on their discussions, the lease as tendered to Zimmerman contained the following two clauses:
51. Landlord hereby agrees that he will not rent any of the premises located in the Leeds Point Shoppes to any party for the purpose of engaging in the operation of a Chiropractic Office during the term of this Lease and renewals thereof.
....
53. During the term of this Lease or any extension or renewal, and for a period of three (3) years after Tenant has vacated the premises, Tenant shall not, directly or indirectly, open, establish, buy or operate or be involved in the operation or ownership of any store located within a radius of two (2) miles of the nearest boundary of the Premises, having a name and/or type of business similar to the one Tenant will operate at the Premises....
After reviewing the proposed lease, Zimmerman voiced concern over the restrictions in Clause 53. Through further negotiations, Clause 53 was redrafted. In final form, that clause added the following phrase to Clause 53:
however, notwithstanding any of the aforementioned should the Tenant have a need to increase the square footage of his office and Landlord is unable to provide the square footage the Tenant needs anywhere within the Leeds Point Shoppes and the Tenant has exercised the second option to renew as specified in Paragraph 55 and Tenant is 18 months into the second option period and Landlord cannot *424 provide Tenant's square footage requirement then the provisions of this Paragraph shall then be waived by the Landlord.
In the summer of 1992, Zimmerman approached plaintiff, James Cox, the owner of Smithville Professional Center, and inquired as to the possible purchase of a condominium for use by Zimmerman as a professional office. Smithville Professional Center is less than two miles from Leeds Point Shoppes.
During the ensuing months, Zimmerman allegedly informed Zell that Cox was encouraging him to purchase the condominium and to relocate his chiropractic practice. Zimmerman utilized the possible condominium purchase as leverage in his discussions with Zell respecting a renegotiated lease. In response, Zell apparently reminded Zimmerman that relocating to the Smithville Professional Center would violate the provisions of Clause 53.
In October 1992, Zimmerman informed Zell that Cox had offered to "buy-out" Zimmerman's lease and to indemnify Zimmerman for any liability he might incur as a result of litigation which Simon might institute if Zimmerman moved to Smithville.
Zell contends that on November 6, 1992, Zimmerman orally agreed to exercise his lease option. Zell prepared a written extension of lease and submitted it to Zimmerman. That document was never signed.
On December 11, 1992, Zimmerman informed Zell in writing of his intent not to renew the lease. In a conversation shortly thereafter, Zimmerman again informed Zell that Cox had agreed to indemnify Zimmerman and his parents, John F. Zimmerman, Sr. and Patricia Zimmerman, guarantors under the original lease, in the event of litigation.
On December 14, 1992, Simon's attorney informed Zimmerman that suit would be instituted if Zimmerman violated Clause 53. On December 15, 1992, Simon's attorney informed Cox that suit for malicious interference with contract would be filed unless Cox ceased negotiations with Zimmerman.
*425 On March 4, 1993, Cox filed a verified complaint alleging that defendants (Betty Simon, Richard Simon, J & M Land Company and Herman Zell) intentionally and wrongfully interfered with Cox's right to sell a condominium to Zimmerman. He sought a permanent injunction and damages. Defendants filed a motion to dismiss for failure to state a cause of action but then filed an answer, counterclaim and third-party action against Zimmerman and his parents. The counterclaim sought damages from Cox for his malicious interference in the contract between Simon and Zimmerman and also asserted a claim for tortious interference with economic advantage. The third-party complaint sought an injunction to prevent Zimmerman from breaching his lease, which was to expire on March 31, 1992.[1]
On a motion for summary judgment in which Cox proffered that he was not interested in pursuing his damage action, the court determined that Cox's complaint would be considered a complaint for declaratory judgment as to the enforceability of the restrictive covenant. Relying on Karlin v. Weinberg, 77 N.J. 408, 390 A.2d 1161 (1978), the court concluded that the restrictive covenant did not protect a legitimate business interest of Simon and was designed to restrain competition of landlords in the geographic area. As such, the court declared the restrictive covenant unenforceable.[2]
*426 On appeal, defendants do not contend that the dismissal of the count of their counterclaim asserting a claim for tortious interference with economic advantage was error. We consider defendants to have abandoned that claim. However, defendants claim error in the dismissal of their counterclaim asserting a claim for malicious interference with contract. We shall discuss that claim in Part II of this opinion.

I
As noted, the trial court predicated its decision as to the enforceability of the restrictive covenant upon Karlin v. Weinberg, supra. In Karlin, the specific issue addressed was "whether a post-employment restrictive covenant ancillary to an employment contract between physicians [was] per se unreasonable and hence unenforceable...." Karlin v. Weinberg, supra, 77 N.J. at 411, 390 A.2d 1161. The Supreme Court concluded that: "A post-employment restrictive covenant will be found to be reasonable when it protects the `legitimate' interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public...." Id. at 417, 390 A.2d 1161 (citations omitted).
Although the decision in Karlin is instructive, we do not find that decision particularly helpful in analyzing the restrictive covenant in this case. Simon and Zimmerman are not competitors in the same occupation or profession. The restrictive covenant here is not a restriction against competition in the traditional sense, as discussed in Karlin. Clause 53 was designed together with Clause 51 to mutually protect the property interests of each contracting party. A restrictive covenant in a commercial setting, as here, is treated differently from a restrictive covenant ancillary to an employment contract. Coskey's T.V. & Radio Sales and *427 Service, Inc. v. Foti, 253 N.J. Super. 626, 602 A.2d 789 (App.Div. 1992).
In Davidson Bros., Inc. v. D. Katz & Sons, Inc., 121 N.J. 196, 579 A.2d 288 (1990), the Supreme Court had occasion to analyze "a restrictive covenant in a deed, providing that the property shall not be used as a supermarket or grocery store" when the covenant was sought to be enforced against a subsequent purchaser of the original covenantor. Id. at 198, 579 A.2d 288. The court established a "reasonableness" test and noted:
Businesspersons, either as lessees or purchasers may be hesitant to invest substantial sums if they have no minimal protection from a competitor starting a business in the near vicinity. Hence, rather than limiting trade, in some instances, restrictive covenants may increase business activity.
[Id. at 210, 579 A.2d 288.]
In assessing the reasonableness of a covenant and hence its enforceability, the court set forth an eight factor standard:
1. The intention of the parties when the covenant was executed, and whether the parties had a viable purpose which did not at the time interfere with existing commercial laws, such as antitrust laws, or public policy.
2. Whether the covenant had an impact on the considerations exchanged when the covenant was originally executed. This may provide a measure of the value to the parties of the covenant at the time.
3. Whether the covenant clearly and expressly sets forth the restrictions.
4. Whether the covenant was in writing, recorded, and if so, whether the subsequent grantee had actual notice of the covenant.
5. Whether the covenant is reasonable concerning area, time or duration. Covenants that extend for perpetuity or beyond the terms of a lease may often be unreasonable. Alexander's v. Arnold Constable, 105 N.J. Super. 14, 27, 250 A.2d 792 (Ch.Div. 1969); Cragmere Holding Corp. v. Socony Mobile Oil Co., 65 N.J. Super. 322, 167 A.2d 825 (App.Div. 1961).
6. Whether the covenant imposes an unreasonable restraint on trade or secures a monopoly for the covenantor. This may be the case in areas where there is limited space available to conduct certain business activities and a covenant not to compete burdens all or most available locales to prevent them from competing in such an activity. Doo v. Packwood, 265 Cal. App.2d 752, 71 Cal. Rptr. 477 (1968); Kettle River R. v. Eastern Ry. Co., 41 Minn. 461, 43 N.W. 469 (1889).
7. Whether the covenant interferes with the public interest. Natural Prods. Co. v. Dolese & Shepard Co., 309 Ill. 230, 140 N.E. 840 (1923).
8. Whether, even if the covenant was reasonable at the time it was executed, "changed circumstances" now make the covenant unreasonable. Welitoff v. Kohl, 105 N.J. Eq. 181, 147 A. 390 (1929).
[Id. at 211-12, 579 A.2d 288.]
*428 In Alexander's Dep't Stores v. Arnold Constable Corp., 105 N.J. Super. 14, 250 A.2d 792 (Ch.Div. 1969), the court was asked to enforce a restriction created within a lease designed to protect Arnold Constable, a department store, from competition. The original covenant specified eleven potential competitors by name and included "any other discount-house type of retail business." Arnold Constable sought on a counterclaim to bar the intended lease of property to Alexander's, one of the eleven potential competitors specified within the original lease contract. The court noted:
Alexander's further urges that paragraph 51 is against public policy and in restraint of trade. The effect of this provision is to exclude from the shopping center 11 specified retailers, including Alexander's. Some of the named retailers are noncompetitors of Arnold Constable. Additionally, "any other discount-house type of retail business" or competing department or specialty store is prevented from locating in the shopping center. It is argued that the total exclusion of retail discount stores should not be countenanced.
Apparently Arnold Constable was interested in locating in a "quality type" shopping center where it would also be free from competition. Presumably it was of the view that noncompetitive discount operations would not attract to the shopping center the type of clientele that patronizes Arnold Constable. The landlord concurred. There is no public policy that militates against the parties incorporating such a provision in the lease. Nor is there any restraint of trade effected through the exclusion of the discount type of store. They are free to locate anywhere on any property not controlled, directly or indirectly, by landlord, Atlas or Doelger.
[Id. at 25-26, 250 A.2d 792.]
The Chancery Court further noted:
The restrictions in the Arnold Constable lease prohibiting competition by Alexander's are reasonable in area and duration. In commercial settings such as seller and purchaser, as distinguished from employer-employee contracts containing territorial restrictions against post-employment competition, restrictions in excess of five miles have been consistently upheld.
[Id. at 27, 250 A.2d 792 (citations omitted).]
The covenant prohibiting competition by Alexander's during the term of the lease is reasonable in time. Such covenants in leases, co-extensive with the lease term, have been upheld without a suggestion that the duration was unreasonable.
[Ibid. (citations omitted).]
In assessing the reasonableness of a covenant, Davidson Bros., Inc. instructs that one factor to be considered is "the *429 intention of the parties when the covenant was executed." Id. 121 N.J. at 211, 579 A.2d 288. In evaluating the lease here, we find that in Clause 51, the landlord agreed that during the initial three-year lease term and during any lease extension, he would not lease other property within Leeds Point Shoppes to another chiropractor. That clause specifically benefitted the tenant to the detriment of the landlord's right to lease available space to any tenant of his choice. In consideration for that restriction on the landlord, the tenant agreed in Clause 53, that during the lease and upon its termination, he would not engage in the practice of chiropractic at any location within two miles of Leeds Point Shoppes for a period of three years.
Although the lease as written does not specify the reason for the inclusion of Clause 53, we may look beyond the contract to determine the reason(s) for its inclusion. In his affidavit filed in defense of the motion for summary judgment, Zell indicated that based upon his experience, generally chiropractors do not choose to locate their professional offices in close proximity to other chiropractors. The inference may be drawn that Clause 53 was intended to afford Simon an opportunity to solicit a member of the chiropractic profession as a new tenant for any available space in the strip mall, which opportunity had been prohibited for the term of the lease by Clause 51.
We are able to discern that another purpose of Clause 53 was to encourage a long-term lease arrangement, potentially a lease lasting nine years. We note the options to renew were not coupled with prohibitive rental increases. Although the rent is designed to increase based upon a standard cost of living formula, the increase is not predicated on an arbitrary figure to be selected by the landlord.
From a purely equitable analysis, Zimmerman for three years benefitted from the rental restrictions in Clause 51 imposed on his landlord. He now seeks to avoid the restraint which was to be imposed upon him should he elect to not renew his lease. As with all contracts, we presume that voluntary parties to a contract *430 intend to create a binding contract and intend to create binding covenants. Charles S. Wood & Co. v. Kane, 42 N.J. Super. 122, 127, 125 A.2d 872 (App.Div. 1956) (citations omitted). Courts should endeavor to find a fair and reasonable interpretation of the covenant, rather than render it completely void. Id. at 128, 125 A.2d 872 (citing 3 Williston, Contracts 1785, § 620; Tunkel v. Filippone, 4 N.J. Super. 107, 66 A.2d 339 (App.Div. 1949)). Even in the restrictive covenant against competition in employment cases, the Supreme Court has adopted a preference to enforce a covenant to the extent reasonable, rather than declare the restriction entirely void. Solari Indus., Inc. v. Malady, 55 N.J. 571, 585, 264 A.2d 53 (1970). In fact, in Solari, the Supreme Court concluded that if a covenant is found to be overbroad, it may be partially enforced to the extent reasonable under the circumstances. Ibid. The trial court declared the restriction as void and unenforceable without determining whether the mechanism of partial enforcement enunciated in Solari would be appropriate.
The covenant in Clause 53 may not be read standing alone; rather, it must be read in conjunction with the covenant in Clause 51. Those two covenants create mutual obligations on the parties. The landlord is obliged to obey the covenant during the lease term. The tenant was obliged to obey the covenant during the lease term and after the lease terminated. We find no reason, demonstrated in the record, why that contractual obligation, if found reasonable pursuant to the factors discussed in Davidson, should not be enforced.
We note that here, the three year restriction on the tenant is relatively short, and the geographic restriction of two miles was not shown to be onerous. No affidavit addressed the lack of availability of other locations suitable for a chiropractic office beyond the two mile restrictive zone.
Zimmerman emphasizes that enforcement of the restrictive covenant will interfere with his ability to treat his patients. Zimmerman, however, has failed to present any proof to support this contention. As in Coskey's T.V., supra, 253 N.J. Super. at 634, *431 602 A.2d 789, "we refrain from an extended discussion of those cases primarily concerned with the rights of the public to have free access to the advice of professionals licensed by the State." See Karlin v. Weinberg, supra (physicians); Dwyer v. Jung, 133 N.J. Super. 343, 336 A.2d 498 (Ch.Div. 1975), aff'd o.b., 137 N.J. Super. 135, 348 A.2d 208 (App.Div. 1975) (attorneys); Mailman, Ross, Toyes & Shapiro v. Edelson, 183 N.J. Super. 434, 444 A.2d 75 (Ch.Div. 1982) (certified public accountants). Our conclusion that this particular clause, as a component of a mutual promise within a commercial lease may be enforced if found to be reasonable, is not tempered by the fact that one party is a professional. We conceive that our analysis should have applicability in any commercial lease. The fact that one party, the tenant, is a professional should not automatically create an exception to the general rule we adopt. In any case, we cannot discern any evidence in the record which would demonstrate that defendant's patients, whom he presumes will follow him to his new location within the restricted two mile zone, would not also follow him were he to relocate more than two miles from the shopping mall.
The analysis of any restrictive covenant is fact-sensitive. As noted in Davidson Bros., "`reasonableness' is necessarily a fact sensitive issue involving an inquiry into present business conditions and other factors specific to the covenant at issue." Davidson Bros., supra, 121 N.J. at 210, 579 A.2d 288. We particularly note that factor five articulated in Davidson Bros. must be specifically utilized in the evaluation of this covenant. "Covenants that extend for perpetuity or beyond the terms of a lease may often be unreasonable." Davidson Bros., supra, 121 N.J. at 211, 579 A.2d 288 (emphasis supplied). We note the Supreme Court did not declare that a covenant extending beyond the term of a lease is void per se.
The record on appeal is devoid of facts sufficient for the court to make a determination of the reasonableness of the restrictive covenant. A plenary hearing is required subject to our conclusion that where a covenant contained within a commercial *432 lease negotiated by the contracting parties is reasonable and serves legitimate business purposes, the covenant will be enforced, either as written, or as modified within the parameters of Solari Indus., Inc. v. Malady, supra, 55 N.J. at 585, 264 A.2d 53.

II
Although the trial court did not expressly articulate the rationale for its decision to summarily dismiss defendant's counterclaim, we may infer that the court, having concluded that the restrictive covenant was unenforceable, determined that the counterclaim for malicious interference with contract was no longer cognizable. Since we have concluded that the restrictive covenant if found reasonable will be enforced, defendant's counterclaim must be reinstated.
We pause to note that a person is liable if he or she unreasonably interferes with the contractual relationship of another. Harris v. Perl, 41 N.J. 455, 461, 197 A.2d 359 (1964). "And since men usually honor their promises no matter what flaws a lawyer can find, the offender should not be heard to say the contract he meddled with could not have been enforced." Ibid. Therefore, "`contracts which are voidable by reason of the statute of frauds, formal defects, lack of consideration, lack of mutuality, or even uncertainty of terms, still afford a basis for a tort action when the defendant interferes with their performance.'" Ibid. (citations omitted). In addition, the law protects an individual's "reasonable expectations of economic advantage." Id. at 462, 197 A.2d 359 (citations omitted). We also note that "`unenforceable promises will be carried out if no third person interferes.'" Geo. H. Beckmann, Inc. v. Charles H. Reid & Sons, Inc., 44 N.J. Super. 159, 166, 130 A.2d 48 (App.Div. 1957) (quoting Prosser, Torts (2nd ed.) 726).
A plaintiff must prove actual interference with a contractual relationship, malice, and actual damages to succeed on a claim of intentional interference with a contractual relationship. *433 Norwood Easthill Assoc. v. Norwood Easthill Watch, 222 N.J. Super. 378, 384, 536 A.2d 1317 (App.Div. 1988). One who maliciously induces another to breach his or her contract is liable under this tort. Id. at 383, 536 A.2d 1317. An individual acts with malice when he or she intentionally commits a wrong without excuse or justification. Monmouth Real Estate Inv. Trust v. Manville Foodland, Inc., 196 N.J. Super. 262, 270, 482 A.2d 186 (App.Div. 1984), certif. denied, 99 N.J. 234, 491 A.2d 722 (1985). A court may infer malice from the absence of a justification, but the desire to decrease competition does justify such actions. Id. These principles shall apply in the analysis of defendant's proofs during the trial of the counterclaim.
Because a restrictive covenant within a commercial context may be enforced if found reasonable, we remand to the trial court for a plenary hearing to assess the reasonableness of this covenant. Moreover, defendant's counterclaim for malicious interference with contract must also be reconsidered. The grant of summary judgment to plaintiff and the dismissal of defendant's counterclaim are reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] A second count of the third-party complaint alleged facts which supported an estoppel theory, premised on Simon's contention that Zimmerman was estopped to deny the enforceability of the restrictive covenant. The court dismissed that count of the third-party complaint in the order dismissing the entire action, entered on December 23, 1993. Simon's appeal does not assert error in that decision, and we deem that the claim has been abandoned.
[2] After a conference call with counsel on April 29, 1993, the court executed an order which deemed plaintiff's complaint as amended to reflect a demand for a declaratory judgment, granted the requested relief and declared the restrictive covenant, Clause 53, as unenforceable. The court also dismissed with prejudice the counterclaim. The order, signed on July 1, 1993, left pending the count of the third-party complaint alleging liability of Zimmerman based on an estoppel theory. It further permitted an amendment to the third-party complaint to afford Simon the opportunity to assert a claim for nonpayment of rent against Zimmerman. All claims not resolved by the order of July 1, 1993, were dismissed by a subsequent order dated December 23, 1993.