222 N.J. Super. 378 (1988)
536 A.2d 1317
NORWOOD EASTHILL ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAINTIFF-APPELLANT,
v.
NORWOOD EASTHILL WATCH, CHRISTOPHER MARRARO, IAN MAITLAND AND YVONNE MAITLAND, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1988.
Decided February 2, 1988.
*380 Before Judges MICHELS, SHEBELL and GAYNOR.
Allan H. Klinger argued the cause for appellant (Klinger, Nicolette, Mavroudis & Honig, attorneys; Allan H. Klinger, of counsel; Carl J. DiPiazza and Gordon E.R. Troy, on the brief).
Michael L. Kingman argued the cause for respondents Christopher Marraro, Ian Maitland and Yvonne Maitland *381 (Woodcock and Kingman, attorneys; Michael L. Kingman, on the brief).
No brief was filed on behalf of respondent Norwood Easthill Watch.
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiff Norwood Easthill Associates, a partnership, appeals the dismissal on summary judgment of its complaint alleging malicious interference with agreements to which it was a party by defendants, Ian and Yvonne Maitland, Christopher Marraro and Norwood Easthill Watch (Watch). We affirm.
The contracts concern the sale and development of a 151.1-acre tract located in the Borough of Norwood and owned by the Greater New York Councils of the Boy Scouts of America. In 1980 plaintiff entered into an agreement to purchase the property. The Maitlands were Norwood residents whose home was located close to the property. They and other neighbors formed Watch, a non-profit group "concerned about the [proposed] development and safety factors," which lobbied against the proposed development of the property.
On December 23, 1983, Norwood's zoning ordinance was declared void under the doctrine of Mt. Laurel II[1] because it failed to provide a realistic opportunity for the construction of low and moderate income housing in the municipality. In January 1985, plaintiff and Norwood's elected officials negotiated a settlement agreement.
On March 5, 1985, a public meeting was held before the mayor and borough council to explain the settlement agreement. The Maitlands were present at the meeting, as was the attorney Marraro, who represented either the Maitlands or Watch. According to Norwood's municipal attorney, at the *382 close of the meeting Marraro threatened that if the borough did not repudiate the settlement agreement with plaintiff, the Maitlands, through Marraro's law offices in Washington, would cause an IRS investigation of the attorney and the mayor to be initiated. The Maitlands and Marraro deny that they threatened the municipal attorney or mayor in any way.
Norwood did not abrogate the settlement agreement. However, about four weeks after the meeting, there was a hearing before the designated Mt. Laurel judge at which the parties to the settlement sought court approval of the agreement. The court denied approval as the agreement did not provide reasonable assurances that low and moderate income housing would be constructed. A revised settlement agreement was later approved by the court.
Neither the mayor nor the municipal attorney brought an action against defendants for the alleged threat. Plaintiff in its complaint asserts that defendants interfered with both its land-purchase contract with the Boy Scouts and its settlement agreement with Norwood. The allegation concerning interference with the Boy Scouts contract has not been pursued and only the settlement agreement interference remains in the case.
In granting summary judgment, the Law Division held that defendants had the right to question vigorously the actions of their government officials and that any threat made to third parties, such as Norwood's municipal attorney and mayor, did not create a right of action in plaintiff for malicious interference with the settlement agreement. According to the motion judge, since the threat was "indirect" it could not sustain the cause of action.
Plaintiff contends that the alleged threat by Marraro was actionable as malicious interference with the settlement agreement and also that there was a genuine issue of material fact which precluded summary judgment. Specifically, plaintiff notes that it is disputed as to whether Marraro actually made the threat to initiate an IRS audit. It is clear the motion judge *383 recognized that a factual issue existed as to whether Marraro made the threat, but assumed that the threat had been made when he rendered his decision. He ruled that even if Marraro had made the threat, there still was no actionable wrong which would constitute malicious interference with the settlement agreement.
Plaintiff maintains that the court erred in finding there was no cause of action for malicious interference merely because the threat was not made directly to plaintiff. We agree that it makes no difference that the alleged threat was not directly addressed to plaintiff. If defendants, through Marraro's threat, sought to affect adversely an agreement to which plaintiff was a party, and if such action directly affected plaintiff's rights under that agreement, plaintiff might maintain an action for malicious interference.
In Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950), the Supreme Court reversed and remanded a case for a jury determination of whether one real estate broker had maliciously interfered with an agency contract between another broker and a property owner. The Court stated:
One who without justification or excuse procures A to break his contract with B, and thereby willfully induces the breach of a legal right, is liable for the ensuing damage. Although a broad extension of the older law, this rule is but the application of the principle that "a violation of legal right committed knowingly is a cause of action.... It is a violation of legal right to interfere with contractual relations recognized by law, if there be no sufficient justification for the interference." [Citations omitted].... One who maliciously induces the breach of a contract such as this is liable ex delicto for the invasion of a legal right to performance of the contract. [Id. at 180-81].
Unquestionably, one who willfully induces or improperly causes a party to a contract to break its contract with another party is liable to that other party for damages caused by the breach. Thus, if the alleged threat by Marraro was for the purpose of achieving a contract's breach, under the reasoning of Louis Schlesinger Co., it should not matter whether the threat was made to Norwood's officials or directly to plaintiff. It is enough that the threat was made to one of the parties to *384 the settlement agreement or its representative and that the threat was made with the intention of upsetting the agreement. Accord 4 Restatement, Torts 2d, § 766 at 7 (1979). Marraro's threat, even though against the representatives of another party to the agreement, had sufficient relationship to plaintiff as a party to the agreement to permit plaintiff to maintain an action for malicious interference.
However, we find no cause to disturb the summary judgment as plaintiff's case is lacking an essential element of the malicious interference cause of action, in that plaintiff has suffered no injury or damage. In New Jersey, "one who unjustifiably interferes with the contract of another is guilty of a wrong." Harris v. Perl, 41 N.J. 455, 461 (1964). While the bare elements of the tort of malicious interference with contractual relations are actual interference with a contract plus proof of the malicious nature of that interference, Raymond v. Cregar, 38 N.J. 472, 479-80 (1962), the element of damage is nonetheless required. Louis Kamm, Inc., v. Flink, 113 N.J.L. 582 (E. & A. 1934).
In Kamm, the Court expressly included the requirement of damage as an element of malicious interference when it stated:
While a trader may lawfully engage in the sharpest competition with those in a like business, by offering extraordinary inducements, or by representing his own goods to be better and cheaper than those of his competitors, yet when he oversteps that line and commits an act with the malicious intent of inflicting injury upon his rival's business, his conduct is illegal, and if damage ensues from it the injured party is entitled to redress. [Id. at 587-88; emphasis in original].
Subsequently, in Louis Schlesinger Co., 4 N.J. at 180, the Court indicated that some damage was required to successfully maintain an action, concluding that one who willfully induces the breach of a contract is liable for "`the damages resulting from such breach' ..." and for "the ensuing damage." Ibid. In Kurtz v. Oremland, 33 N.J. Super. 443, 461 (Ch. Div.), aff'd o.b. 16 N.J. 454 (1954), the court in analyzing a claim for malicious interference noted that "[t]he mere proof of competition or interference is insufficient to give rise to the relief here *385 demanded. There must be proof that the interference resulted in damage to the plaintiffs."
Many legal authorities include damage as an essential element of the malicious interference cause of action. 4 Restatement, Torts 2d, supra, expressly includes the requirement of damage in its analysis of the tort, stating:
One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract. [§ 766 at 7; emphasis supplied].
Prosser states that "[i]t is generally agreed that proof of some damage is necessary to sustain the [malicious interference cause of] action...." Prosser and Keeton, Torts (5 ed. 1984), Ch. 24 at 1002. Still another authority expressly includes "damages to the plaintiff" as an essential element of the tort. 3 Dooley, Modern Tort Law, Liability and Litigation (rev. ed. 1984), § 44.02 at 417; § 44.08 at 431-32. A further authority which includes damage as a "factor necessary to recovery" for malicious interference is 2 Harper, James, and Gray, The Law of Torts (2 ed. 1986), § 6.5 at 302.
Plaintiff has argued for nominal and punitive damages but cannot demonstrate that it incurred any actual damage because of defendants' alleged malicious interference. Since it was the court which abrogated the agreement by declining to approve it because it was inadequate, any added legal expense or loss of time incurred by plaintiff because of the settlement agreement's demise was not attributable to defendants, but to the inadequate character of the agreement itself.
Not only do these facts show absence of damage related to the threat, they also negate proximate cause or the requisite "actual interference" by defendants with the settlement agreement. Raymond v. Cregar, 38 N.J. at 479. The settlement agreement remained intact despite the alleged threat by defendants, and thus no interference actually occurred.
*386 Plaintiff argues that despite its inability to prove actual damages, it should be allowed to obtain punitive damages under the authority of Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37 (1984), which holds that "punitive damages may be assessed in an action for an intentional tort involving egregious conduct whether or not compensatory damages are awarded, at least where some injury, loss, or detriment to the plaintiff has occurred." Id. at 51. As stated, however, plaintiff cannot show any injury, loss, or detriment reasonably attributable to defendants' alleged malicious interference. Thus, we reject plaintiff's position on the issue of punitive damages.
Finally, plaintiff asks this court to "create new law" and to recognize separately defendants' threat to initiate a federal tax audit as a distinct cause of action, closely akin to the recognized malicious interference cause of action, but without its damage element. We decline to recognize such a new cause of action; to our view, it is unnecessary. If we did recognize such an action, at least some minimal damage or injury should still be required. Here, no IRS audit was actually requested and the settlement agreement was unaffected by the alleged threat.
The clear absence of any damage to plaintiff resulting from the alleged threat vitiates plaintiff's claim. There is no genuine issue of material fact regarding the absence of damage, and therefore, defendants were entitled to summary judgment as a matter of law. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954).
Affirmed.
NOTES
[1] So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158 (1983).