731 A.2d 1205 (1999)
323 N.J. Super. 18
Ana ROCCI, Plaintiff-Appellant,
v.
Ecole Secondaire MacDONALD-CARTIER and Edward Tilli, Defendants-Respondents, and
Javier Matiacci Rodriguez, Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted February 22, 1999.
Decided July 6, 1999.
*1206 Jacqueline R. Rocci, Brunswick, attorney for plaintiff-appellant.
Hoagland, Longo, Moran, Dunst & Doukas, New Brunswick, attorneys for defendants-respondents (Donald D. Davidson, of counsel; Michael T. Kearns, on the brief).
Before Judges HAVEY, PAUL G. LEVY and LESEMANN.
The opinion of the court was delivered by *1207 PAUL G. LEVY, J.A.D.
Plaintiff brought an action against defendant Edward Tilli and his employer, defendant Ecole Secondaire Macdonald-Cartier,[1] alleging that Tilli maliciously published statements about her that were defamatory in a letter he authored and sent to the principal of the school where plaintiff was employed as a teacher. Defendants moved for summary judgment, contending the statements were not defamatory and there was no pecuniary loss, and plaintiff cross-moved for partial summary judgement to the effect that the statements were "libelous per se" and sought to compel discovery. The trial judge granted defendants' motion, finding that there was neither defamation nor damages; the cross-motions were denied. To the extent that the trial judge decided there was no proof of damages, we agree and affirm.
The opening paragraph of the letter sets out the thesis:
My name is Ed Tilli and I am a teacher at Macdonald Cartier High School. This will be my 25th year as a teacher. Over the past years I have taken groups of students (as many as 90 at a time) on various educational trips; such as Washington, D.C., New York City, Daytona Florida, Paris France, London England, Belgium and a total of six times to Spain. In all my years of experience as teacher and counselor I have had to deal with very few problems in comparison with this years Spain experience.
As you may already know this years adventure was a joint canadian-american school trip. Our ten students of which eight girls and two boys teamed up with your twenty-three boys excluding the adults. As such, this experience would have benefitted all students if it were not for the unfortunate lack of professionalism on the part of Mrs. A. Rocci. If I may I would now like to relate to you both our[2] personal experiences with her as well as those of Javier Matiacci Rodriguez (the E.F.Tour Guide during the Spain visit).
Tilli's letter continued for several pages, describing plaintiff's actions on each day of the trip. The specific language that plaintiff contends supports her claim of libel is as follows:
Thursday, April 13
As related to the Tour Guide and the students, Mrs. Rocci had had seven bottles of wine on the flight from J.F.K. to Amsterdam. This was to set the tone for things to come. That very same evening fully aware that the next day we were to get up at 7:00 a.m. for the Madrid guided tour, Mrs. Rocci kept her students, with some of ours, out until 2:00 a.m. This would make it very difficult for the students to stay awake and remain focused that day.
Friday, April 14
On the way to Toledo, being overtired, the students did very little listening if any at all.... Once again, that evening your students were kept out until 2:30 a.m. while being fully aware of the 7:00 a.m. wake-up call and early departure to Segovia....
Monday, April 17
... In the evening your students were forced out until 1:30 a.m. and were scheduled to get up and leave for Tangiers, Morocco at 4:30 a.m. As usual the students were very tired and had difficulties enjoying Tangiers. (Information related by both students and Tour Guide).
Plaintiff contends that the comments about her consumption of seven bottles of wine during the flight and about keeping *1208 students out at unreasonably late hours portrayed her as an "unethical" teacher-chaperone and as "acting selfishly at the expense of her students' wellbeing," thus clearly denigrating her reputation. We concede that a jury may well find the letter to be defamatory. However, it is the lack of any proof of damages that causes us to affirm summary judgment for defendants.
As a chaperone of a school trip, plaintiff was not involved in an undertaking "that one in [her] position would reasonably expect implicates a legitimate public interest with an attendant risk of publicity," so proof of publication with actual malice is not required. Sisler v. Gannett Co., Inc., 104 N.J. 256, 279, 516 A.2d 1083 (1986). Instead, plaintiff is a private individual whose assertions that her reputation was damaged are governed by a negligence standard. Kass v. Great Coastal Express, Inc., 152 N.J. 353, 704 A.2d 1293 (1998). She was required to prove that Tilli knew the statements were false when he wrote the letter, that the letter was written with reckless disregard of its truth or falsity, or that Tilli negligently failed to determine the falsity of the contents of the letter before sending it. Id. at 356, n. 1, 704 A.2d 1293. The trial judge did not accept as a fact that the contents of the letter were defamatory, and the judge also said: "I see absolutely no proof whatsoever of any damages." On appeal, plaintiff does not mention any evidence in the record that would support a monetary award for damages, and instead contends that "the absence of pecuniary loss is inconsequential to the cause of action."
The use of the terms "inferred damages," "actual damages," and "special damages" in the context of a defamation action causes some confusion, but a closer reading of Sisler convinces us that the trial judge was correct. The Court held that a plaintiff must submit proof of damage to reputation. First, Justice Handler quoted from Gertz v. Robert Welch, Inc., 418 U.S. 323, 349-50, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789, 811 (1974), to introduce the concept of actual injury:
Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course juries must be limited by appropriate instructions and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

[104 N.J. at 280, 516 A.2d 1083.]
He continued, with special reference to injury to reputation, as follows:
Injury to reputation, even more so than personal injury or mental anguish, which are both amenable to expert testimony, defies exact measurement. The type of direct testimony lacking here has traditionally been hard to produce; in fact, it was this difficulty that engendered the "presumed damages" doctrine. However, the inherently amorphous quantification of libel damages potentially enables juries to vary damages awards in accordance with the popularity or unpopularity of the speaker or the view expressed. Accordingly, a plaintiff should offer some concrete proof that his reputation has been injured. One form of proof is that an existing relationship has been seriously disrupted, reflecting the idea that a reputation may be valued in terms of relationships with others. Testimony of third parties as to a diminished reputation will also suffice to prove "actual injury." Awards based on a plaintiff's testimony alone or on "inferred" damages are unacceptable.
[Id. at 291, 516 A.2d 1083 (citations omitted).]
The Court then addressed the obligation of an appellate court to review a jury's award of damages in a defamation action.

*1209 Because of the elusive nature of such evidence, courts must scrutinize jury damages awards and weigh carefully the type and substance of reputation-injury evidence presented. Courts reviewing jury awards based on lesser evidential showings should be more scrupulous, and less hesitant about reducing the verdicts to conform with the evidence. While this practice might reduce libel awards, plaintiffs still retain the satisfaction of having their reputation vindicated publicly by a jury verdict.

[Ibid.]
The last sentence means that a plaintiff's verdict may be reduced if the evidence does not merit a damage award as large as the jury gave, but it does not mean that a plaintiff may seek only a verdict that the published statement was defamatory without regard to any actual injury.
The need for proof of damages to establish a defamation claim was also explained by Judge Skillman in his dissent in Ward v. Zelikovsky, 263 N.J.Super. 497, 525, 623 A.2d 285 (App.Div.1993), rev'd[3] 136 N.J. 516, 643 A.2d 972 (1994) (citations omitted):
Most significantly, the Supreme Court of New Jersey has criticized the "presumed damages" doctrine and suggested that proof of actual damages may be required in all defamation actions.... Although the discussion in Sisler is constructed around the limitations imposed by Gertz upon damage awards in defamation actions involving issues of public concern, the Court's comments do not appear limited to that kind of case. Thus, Sisler suggests that the Court may now require proof of actual damages in all defamation cases.
We adopted the same position in Feggans v. Billington, 291 N.J.Super. 382, 390-91, 677 A.2d 771 (App.Div.1996)("In order to prove defamation, a plaintiff must establish, in addition to damages, [that the defendant was liable]."). Similar to an ordinary negligence matter, to resist a motion for summary judgment, a plaintiff must present proof of a material question of fact as to both liability and damages. Norwood Easthill Assoc. v. Norwood Easthill Watch, 222 N.J.Super. 378, 384, 536 A.2d 1317 (App.Div.1988).
Plaintiff did not present evidence of an actual injury by way of damage to reputation or emotional distress or loss of wages or change in position. In her trial brief, plaintiff admitted she had not been suspended, terminated or reprimanded in any way by her employer as a result of the letter, and she chaperoned subsequent trips to Spain and other countries. She also admitted she had not sustained any mental or physical injury. Most importantly, there is no mention in the discovery process or in the briefs submitted on appeal that any single person came forward to state that plaintiff's reputation had been besmirched by the information contained in the Tilli letter.
Acknowledging that she had suffered no pecuniary loss from defendant's actions, plaintiff testified at her deposition that as a result of defendant's letter, and her students' knowledge of that letter, she had been "upset" with their joking comments about the incident. She said she had heard student comments on the matter "so many times" and, "it was so embarrassing". She repeated that she had suffered from "embarrassment" and said she had continued to feel "anxiety". She testified that, "I just remember that letter and it's like a ghost for me; it's there."
That testimony is insufficient to support a claim for emotional distress. Damages for emotional distress must be "so severe that no reasonable man could be expected to endure it." Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366-67, 544 A.2d 857 (1988) (citation omitted). Determination of whether emotional distress can be found in a particular case is a question of law for a court to decide, *1210 leaving the jury to decide if it had been proved in fact. Id. at 367, 544 A.2d 857. Here, plaintiff's upset, embarrassment and anxiety are no more severe than was Buckley's loss of sleep, aggravation, headaches, nervous tension and embarrassment which the Supreme Court held was not severe. As in Buckley, because there is no severe emotional distress, further examination into the intent of the tortfeasor is not warranted.
Accordingly, we affirm the order granting summary judgment to defendants.
Affirmed.
LESEMANN, J.S.C. (temporarily assigned), dissenting.
I believe the majority opinion misapplies some well established principles governing the law of defamation, and therefore I dissent.
First, nothing in our current law of defamation indicates that this State has abandoned the age old distinction between libel and slander, a distinction which the majority ignores. Libel consists of a written defamation; slander is generally unwritten. One who is libeled need not demonstrate "special" or "pecuniary" damages in order to maintain a suit. One who suffers a slander (unless the slander constitutes one of four special kinds of slander) does have to show such damages.[1]
These principles, clear and settled, are set out in such standard works as, for example, the Restatement of Torts. Section 568 of the Restatement defines the difference between libel and slander:
(1) Libel consists of the publication of defamatory matter by written or printed words....
(2) Slander consists of the publication of defamatory matter by spoken words,....
[Restatement (Second) of Torts, § 568 (1989).]
Section 569 of the Restatement then describes why it is significant to distinguish libel from slander:
One who falsely publishes matter defamatory of another in such a manner as to make the publication a libel is subject to liability to the other although no special harm results from the publication.

[Id. at § 569.]
That is the law in this State, as it is in most, if not all, states. One who has been libeled is not limited to recovering for pecuniary lossesto what are sometimes called "special damages." He or she may recover general damages as welldamages to one's reputation as well as damages for personal "humiliation and mental anguish and suffering" without proof of specific dollar loss. Our Supreme Court made that particularly clear in Sisler v. Gannett Co., Inc., 104 N.J. 256, 280, 516 A.2d 1083 (1986) where, in dealing with a plaintiff's right to recover such non-pecuniary losses, the Court set out the rule:
[S]uffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.
Indeed, it is often said that such general damagesdamages to one's reputation, as well as personal "humiliation and mental anguish and suffering" are "presumed" from a libel. See, Leers v. Green, 24 N.J. 239, 251, 131 A.2d 781 (1957):
[E]very man has a right to his good name, unimpaired; and false defamatory *1211 words, written and published, injurious to the reputation of another or exposing to hatred, contempt or ridicule or subjecting him to a loss of the good will and confidence entertained toward him by others, constitutes a libel, actionable per se without proof of any consequential special damage where the imputation of the words on their face is such as to raise the presumption of damage in the natural course, as a matter of law.
See also, Stickle v. Trimmer, 50 N.J.Super. 518, 522, 143 A.2d 1 (App.Div.), certif. denied, 28 N.J. 57, 145 A.2d 168 (1958):
[U]nder the law of this State all libel is actionable, without proof of special damages. Damage is presumed in the case of all defamatory libels, as distinguished from slanders.
Thus, there was probably no need for plaintiff even to assert in her complaint that she suffered general damages such as humiliation, mental anguish and suffering, since those consequences are presumed to flow from a libel. In fact, however, plaintiff's complaint does assert such damages and her testimony in pretrial depositions supports that claim.
The events that led to this suit began with plaintiff, a teacher, serving as chaperone for two high school classes, from two different schools, on a European trip. One of the schools was the one in which she was employed, St. Joseph's High School. The other was the MacDonald-Cartier School, in which Edward Tilli was a teacher. Mr. Tilli also accompanied the classes to Europe.
After the trip, Tilli wrote to plaintiff's employer complaining of plaintiff's conduct on the trip. He said she drank to excess during the airplane trip to Europe and showed bad judgment by keeping the students up too late every night, and thus reducing the benefits they received from the trip. Plaintiff denied those allegations. Although, she does not claim to have suffered any tangible, pecuniary damage as a result of the charges, she does maintain that she suffered emotional distress and was exposed to ridicule and humiliation in her employment. In her deposition she said she had been upset by the students' joking comments about the incident; that she found it "so embarrassing;" that she had heard student comments on the matter "many times," and that the incident continued to cause her anxiety. She said, "I just remember that letter, and it's like a ghost for me; it's there." She attached no pecuniary value to those feelings but, for the reasons already noted, she was not required to do so. The damages may have been non-pecuniary, but they were no less real, and they have long been recognized as damages recoverable in a libel action.[2]
The principles just referred to do not suggest, nor do I suggest, that recovery for such nonfinancial damages should be unlimited, any more than damages for physical pain and suffering in a personal injury case are unrestricted. As the court noted in Sisler, while damages in a libel case are not limited to out-of-pocket losses, the recovery of substantial nonpecuniary damages requires proof of those damages.
The cases cited by the majority do not support a dismissal of plaintiff's complaint. Ward v. Zelikovsky, 136 N.J. 516, 643 A.2d 972 (1994) involved a slander, not a libel.
*1212 As noted, the rules governing the two are different. And Norwood Easthill Assoc. v. Norwood Easthill Watch, 222 N.J.Super. 378, 536 A.2d 1317 (App.Div.1988) is not a defamation case at all and involves a totally different field of law.[3]
Whether, following trial, plaintiff is able to demonstrate any substantial damages, or whether she may be relegated to nominal damages, or even perhaps recover no damages at all if the trier of fact concludes that the statements in question were not libelous, is a matter not now before us. All is that is before us is whether plaintiff has demonstrated a right to go forward with her complaint, and I believe she has.
I would reverse.
NOTES
[1] Javier Matiacci Rodriguez was also named as a defendant. Plaintiff has not provided any pleading that explains the disposition of the action against him.
[2] The letter was signed by Mr. Tilli and David Gross. Mr. Gross is apparently another teacher at Mr. Tilli's school, but he is not a defendant in this action.
[3] The Court reversed on the basis that the statements were not actionable as defamation, and it did not reach the issue of proof of damages.
[1] See Gnapinsky v. Goldyn, 23 N.J. 243, 250, 128 A.2d 697 (1957), where the Court notes that "[t]he law of defamation is burdened with quaint distinctions of historical genesis." I do not understand the majority's opinion to be an attempt to shed those historical distinctions and create a new body of defamation law for this Statean undertaking which might be useful but is probably inappropriate for an intermediate appellate court.
[2] I understand the majority opinion to be based on the damage issue, and I do not understand it to deny that a jury question was presented as to defendant's alleged negligence and the defamatory nature of Tilli's letter. The latter would seem particularly clear since the claims of misconduct are aimed directly at plaintiff's professional ability and performance. Thus, they fall within one of the four areas of slander per se, where, even if the defamation had been oral rather than written, the victim could have recovered general, non-pecuniary damages to the same extent as if the statement had been in writing. See Restatement (Second) of Torts § 570 (1989). The four categories of slander per se are those which impute to another, (1) a criminal offense; (2) a "loathsome" disease; (3) "conduct, characteristics or a condition" that "would adversely affect" one's "fitness for ... [her] trade or profession ..."; and, (4) serious sexual misconduct. Id. at §§ 570 and 573. See also, e.g., Gnapinsky v. Goldyn, supra, 23 N.J. at 250-51, 128 A.2d 697.
[3] The majority also cites Feggans v. Billington, 291 N.J.Super. 382, 390-91, 677 A.2d 771 (App.Div.1996). However, Feggans does not involve a damage issue at all. The question there was whether defendants in a defamation case had lost their qualified privilege to comment on plaintiff's conduct because their actions had been in "reckless disregard" of plaintiff's interests. The court's discussion was on that issue and its parenthetical reference to damages was a passing comment, not directed to anything before it at the time. Not only was the remark not a "holding," it was not even a considered dictum. It certainly could not be viewed as overruling or changing the well developed principles discussed above.