749 A.2d 852

DIANE RUNYON, PLAINTIFF–RESPONDENT, v. MAUREEN
B. SMITH, PH.D AND PSYCHOLOGICAL ASSOCIATES,
DEFENDANTS–APPELLANTS.

Argued March 28, 2000—Decided May 10, 2000.

*John R. Gonzo* argued the cause for appellants (*Harwood Lloyd,* attorneys).

*Charles J. Lange, Jr.,* argued the cause for respondent.

PER CURIAM.

We affirm the judgment of the Appellate Division substantially for the reasons set forth in its comprehensive opinion. *Runyon v. Smith,* 322 *N.J.Super.* 236, 730 *A.*2d 881 (1999). We add these observations to clarify the basis for our disposition and to address the concerns of our dissenting colleagues.

We recognize the dissent's concern about instances in which the psychologist-patient privilege must yield because of "the potential of harm to others." *Post* at 442, 749 *A.*2d at 854 (O'Hern, J., dissenting). In *Kinsella v. Kinsella,* 150 *N.J.* 276, 316, 696 *A.*2d 556 (1997), adverting to that very concern, we observed that "[b]ecause of the unique nature of custody determinations, the scope of the patient-psychiatrist privilege that may be claimed by parents in relation to custody issues poses more difficult problems than those posed by the scope of the privilege in other situations." We specifically acknowledged in *Kinsella* that courts in custody disputes "must strike a balance between the need to protect children who are in danger of abuse and neglect from unfit custodians and the compelling policy of facilitating the treatment of parents' psychological or emotional problems." *Id.* at 327, 696 *A.*2d 556.

■ We are not prepared on this inadequate record to agree unqualifiedly with the Appellate Division's conclusion that, even absent Dr. Smith's testimony, "there was sufficient evidence from plaintiff's friend and from Mr. Runyon to justify awarding temporary custody of the children to Mr. Runyon." 322 *N.J.Super.* at 245, 730 *A.*2d 881. We simply cannot assess in hindsight whether the testimony of Mr. Runyon and that of plaintiff's friend provided an adequate basis for the Family Part's temporary custody award. Nevertheless, all parties acknowledge that the Family Part did not conduct the *in camera* review contemplated by *Kinsella,* 150 *N.J.* at 328, 696 *A.*2d 556, and apparently did not make the appropriate determination on the record that evidence of fitness from other sources was inadequate. We also acknowledge that the hearing in question took place more than two years before *Kinsella* was decided. However, we cannot turn back the clock and determine now whether adherence to the *Kinsella* standards and procedures would have permitted the privilege to be pierced. Indisputably, those standards and procedures were not observed. We therefore conclude, as did the Appellate Division, 322 *N.J.Super.* at 246, 730 *A.*2d 881, that "Dr. Smith's testimony at the January hearing and her subsequent report violated the psychologist-patient privilege."

■ We acknowledge that in certain circumstances a psychologist may have a duty to warn and protect third parties or the patient from imminent, serious physical violence. As part of that duty, the psychologist would be required to disclose confidential information obtained from a patient. See *N.J.S.A.* 2A:62A–16. Nothing in this record demonstrates that the children were exposed to danger of a degree that approached the level of danger that triggers the statutory duty to warn. Moreover, Dr. Smith's testimony occurred about six months after her last session with plaintiff. That six-month interval is itself inconsistent with the statutory standard of "imminent serious physical violence." *N.J.S.A.* 2A:62A–16b(1).

■ We also are in accord with the Appellate Division's conclusion that a psychologist who fails to assert her patient's privilege

and discloses as a witness confidential information concerning that patient without a court determination that disclosure is required may be liable for damages to the patient. See *Stempler v. Speidell*, 100 *N.J.* 368, 375–77, 495 *A.*2d 857 (1985) (discussing liability of physicians in general for unauthorized disclosure of confidential information). The dissent argues persuasively, however, that plaintiff incurred no recoverable damages as a result of Dr. Smith's disclosures, asserting that the result of the custody dispute would have been the same even if her testimony had been excluded. *Post* at 444, 749 *A.*2d at 855 (O'Hern, J., dissenting). That plaintiff may not prevail on her claim for damages does not affect her right to pursue it. Because the issue is not before us, however, we express no view on the merits of plaintiff's claim.

Affirmed.

O'HERN, J., dissenting.

I agree with the substantive analysis of the Appellate Division's restatement of the manner in which a psychologist should exercise responsibility in preserving a patient's confidences. Those principles were set forth in our decision in *Kinsella v. Kinsella*, 150 *N.J.* 276, 696 *A.*2d 556 (1997). Resolution of the *Kinsella* issues is but the beginning of the analysis, not the end.

Psychologists labor under conflicting sets of duties. They have a duty to respect the confidences of a patient, but exceptions do exist. Psychologists cannot always ignore the potential for harm to others.

> The seminal case regarding the duty of a psychiatrist [or psychologist] to protect against the conduct of a patient is *Tarasoff v. Regents of Univ. of Cal.*, 17 *Cal.*3d 425, 551 *P.*2d 334, 131 *Cal.Rptr.* 14 (1976). In *Tarasoff* the plaintiffs alleged the defendant therapists had a duty to warn their daughter of the danger posed to her by one of the therapists' patients. The *Tarasoff* plaintiffs were parents of Tatiana Tarasoff, a young woman killed by a psychiatric patient. Two months prior to the killing, the patient informed his therapist that he intended to kill a young woman. Although the patient did not specifically name Tatiana as his intended victim, plaintiffs alleged, and the trial court agreed, that the defendant therapists could have readily identified the endangered person as Tatiana.

Applying *Restatement (Second) of Torts* § 315 (1965); to the facts before it, the *Tarasoff* court held the patient-therapist relationship was sufficient to support the imposition of an affirmative duty on the defendant for the benefit of third persons. *Tarasoff*, 17 *Cal.*3d at 435, 131 *Cal.Rptr.* 14, 551 *P.*2d 334. The *Tarasoff* court ruled that when a psychotherapist determines, *or, pursuant to the standards of the profession*, should determine, that a patient presents a serious danger of violence to another the therapist incurs an obligation to use reasonable care to protect the intended victim against such danger. *Tarasoff*, 17 *Cal.*3d at 435, 131 *Cal.Rptr.* 14, 551 *P.*2d 334. According to the *Tarasoff* court, discharge of the duty may require the therapist to take whatever steps are necessary under the circumstances, including possibly warning the intended victim or notifying law enforcement officials.

[*Petersen v. State*, 100 *Wash.*2d 421, 671 *P.*2d 230, 236 (1983) (emphasis added).]

This psychologist may have erred in not asserting her patient's privilege. She may have believed that she was under a duty to do so, being in the presence of a court that expressed no concern for the propriety of her conduct. One thing is clear, there is no evidence that she intended to do anything but that which was best for the involved children.

We generally try to avoid "unnecessary court events." *State v. Shaw*, 131 *N.J.* 1, 13, 618 *A.*2d 294 (1993). We should do that here. Although *Kinsella* had not been decided when the psychologist testified in the custody case, the trial court was fully aware of the principles of *Kinsella* when it dismissed the patient's subsequent complaint for malpractice. The trial court was also fully aware of the principles that govern a professional malpractice action against a psychologist.

The plaintiff in a malpractice action based on tort must establish four elements to make out a *prima facie* case.... When the plaintiff is a patient and the defendant is the patient's therapist, Schultz tells us that the four key elements necessary to prove malpractice are: "(1) that a therapist-patient relationship was established; (2) that the therapist's conduct fell below the acceptable standard of care; (3) that this conduct was the proximate cause of the injury to the patient; and (4) that an actual injury was sustained by the patient." In the particular case of a patient suing a therapist for breach of confidentiality, the most difficult hurdles to overcome, showing malpractice has taken place, are "whether the standard of care to which the psychotherapist is obliged to conform encompasses confidentiality, whether the duty is breached by disclosure and whether recoverable damages are incurred."

[Ellen W. Grabois, *The Liability of Psychotherapists for Breach of Confidentiality*, 12 *J.L. & Health* 39, 68–69 (1998).]

Even assuming that plaintiff can establish by competent expert testimony that Dr. Smith's conduct fell below the acceptable standard of care,[1] no "recoverable damages" were incurred. Grabois, *supra*, 12 *J.L. & Health* at 69.

In the analogous context of attorney malpractice in a custody dispute,

> [t]he client bringing a legal malpractice action has a heavy burden. The plaintiff must effectively prove two cases; the one giving rise to the malpractice action, and the one for legal malpractice. For example, in a malpractice action stemming from a child custody dispute, the jury must determine the custody issue, using the appropriate legal principles in order to make a determination of the legal malpractice action. The case-within-a-case approach speaks to the elements of causation and damages, for only after making a determination of the case below can a jury find that the attorney's negligence was the proximate cause of the client's loss. If a jury finds the attorney was in fact negligent, but the underlying claim would have, absent this breach of duty, been resolved in the same manner, it cannot be said that the attorney's negligence caused damage.
>
> [Andrew S. Grossman, *Avoiding Legal Malpractice In Family Law Cases: The Dangers of Not Engaging in Formal Discovery*, 33 *Fam. L.Q.* 361, 367 (1999).]

The trial court has already determined that not only would the psychologist's evidence have been admissible in the custody action, the outcome of the custody dispute would have been the same whether or not the evidence was introduced.

No viable claim for emotional distress damages has been presented.

> Damages for [negligent infliction of] emotional distress must be "so severe that no reasonable man could be expected to endure it." *Buckley v. Trenton Saving Fund Soc.*, 111 *N.J.* 355, 366–67, 544 *A.2d* 857 (1988) (citation omitted). Determination of whether emotional distress can be found in a particular case is a question of law for a court to decide, leaving the jury to decide if it had been proved in fact. *Id.* at 367, 544 *A.2d* 857. Here, plaintiff's upset, embarrassment and anxiety are no more severe than was Buckley's loss of sleep, aggravation, headaches, nervous tension and embarrassment which the Supreme Court held was not severe. As in *Buckley*, because there is no severe emotional distress, further examination into the intent of the tortfeasor is not warranted.
>
> [*Rocci v. MacDonald–Cartier*, 323 *N.J.Super.* 18, 25, 731 *A.2d* 1205 (App.Div. 1999).]

---

[1] Even if the *Tarasoff* principles did not authorize disclosure, "statements made during joint counseling are not privileged in litigation between the joint patients." *Redding v. Virginia Mason Medical Center*, 75 *Wash.App.* 424, 878 *P.2d* 483, 485 (1994). Dr. Smith counseled the parties jointly.

In short, the Court has perceived the tip of the iceberg. The Court would do well to look under the surface of the water to perceive the formidable reasons why this case should be concluded. A futile rerun of the custody trial will only serve to reopen old wounds. It is time to end the discord. Lawsuits are not the solution to every problem. Ethics disciplinary boards are better suited to resolving this problem.

> For most licensed and trained psychotherapists, this confidential relationship will be spelled out in professional ethical codes and state statutes. Therapists, therefore, must be alert to situations in which they are called upon to reveal information about their patients. Therapists are protected by privilege statutes, but exceptions do exist. Psychotherapists must educate themselves with respect to these statutes, especially since we live in a time in which third party payors and others will seek to know more about the patient's prognosis and the usefulness of the psychotherapy. Patients, too, must be alert and inquisitive, and ask that their therapists inform them of any requests for confidential information.
>
> [Grabois, *supra*, 12 *J.L. & Health* at 84.]

Because the issue remaining in this case is one of professional responsibility, not one of "recoverable damages," I would reinstate the judgment of the Law Division dismissing the plaintiff's complaint for malpractice.

The Chief Justice joins in this opinion.

*For affirmance*—Justices STEIN, COLEMAN, LONG, VERNIERO and LaVECCHIA—5.

*For reversal and remandment*—Chief Justice PORTIZ and Justice O'HERN—2.