4 A.3d 601

W.J.A., PLAINTIFF–APPELLANT, v. D.A.,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 24, 2010—Decided September 27, 2010.

Before Judges AXELRAD, FISHER and SAPP–PETERSON.

*Stanley L. Bergman, Jr.,* argued the cause for appellant.

*Timothy J. Hinlicky* argued the cause for respondent.

The opinion of the court was delivered by

SAPP–PETERSON, J.A.D.

In this appeal from the grant of summary judgment dismissing plaintiff's defamation action, we determine whether Internet postings that accuse one of engaging in sexual misconduct are the type of defamatory statements for which damages may be presumed and therefore do not require the aggrieved party to prove actual harm to reputation. The motion judge concluded that although the Internet posting was defamatory per se, the statements were akin to libel rather than slander, and as such, plaintiff was required to prove actual injury to reputation, which plaintiff admittedly had not done. We reverse.

Plaintiff is the uncle of defendant. In 1998, defendant filed a complaint against plaintiff seeking to recover damages arising out of his allegation that plaintiff sexually assaulted him when he was a minor. Plaintiff filed counterclaims alleging frivolous pleading, libel and slander, extortion, infliction of emotional distress and violation of his constitutional and statutory rights. Defendant's

complaint was dismissed because the statute of limitations had expired. Plaintiff, however, continued with his counterclaim for defamation based on allegedly defamatory statements defendant made to the Ventnor City Police. The matter proceeded to trial and the jury returned a verdict favorable to plaintiff, awarding $50,000 in compensatory damages. The trial court separately awarded a judgment against defendant in the amount of $41,323.70 for frivolous litigation.

Defendant filed for bankruptcy and attempted to discharge the judgments against him, but the bankruptcy court found that the judgments were non-dischargeable. Defendant then filed a motion seeking relief from judgment pursuant to *Rule* 4:50-1.

While that motion was pending, defendant created a website where he discussed the litigation because he "was outraged by the justice [he] believed [he] did not get through that time and was desperate for any help [he] could get from anyone." The website allegedly contained statements by defendant that plaintiff molested him when he was a minor, specifically, "I was molested by my [u]ncle [W.J.A.], when I was a minor many, many times" and that W.J.A. "molest[ed] me and R.S. when we were minors."

After plaintiff became aware of defendant's website, he sent a letter in February 2007 to a New Jersey attorney, whom he believed was representing defendant, demanding that defendant shut down the website and warning that a complaint for defamation would be filed. By this time, however, defendant had moved to Florida. Defendant shut down the website after the New Jersey attorney forwarded plaintiff's letter to him in Florida.

On March 26, 2007, plaintiff filed a complaint in which he alleged that defendant's website contained defamatory statements. Defendant was purportedly served on July 18, 2007. Because defendant failed to respond to the complaint, plaintiff moved for the entry of default pursuant to *Rule* 4:43-1.

On April 3, 2008, plaintiff filed a motion to enter a default judgment for $500,000 against defendant. Defendant entered a

special appearance on May 23, 2008, challenging the service of process, seeking to vacate the default, and requesting that the court dismiss plaintiff's complaint for lack of jurisdiction. The motion judge granted defendant's motion to vacate the entry of default but denied the motion to dismiss plaintiff's complaint for lack of jurisdiction.

Thereafter, there were a number of additional proceedings before the motion judge, including a motion requesting that the judge recuse himself, which the motion judge denied, and another motion to dismiss on jurisdictional grounds that was also denied. During the hearing on the latter motion, the judge expressed the view to counsel that the matter before him did not involve slander. Plaintiff's counsel agreed, while defense counsel sought clarification. The judge responded that he was

> not making any substantive rulings. I am telling you that I do not understand there to be[,] on the basis of what I've seen before me[,] any slanderous act opposed to a libelous act as opposed to a defamatory act, and I'm not making, expressing or implying any view on your motion on the attempt you wanted me to distinguish between slander and libel per se. I don't want you to walk out of here with any level of thinking that I have resolved that issue. I just don't think this is slander.

The judge then instructed defense counsel to rely on plaintiff's counsel's assertion that "the complaint doesn't assert a slander" in composing his answer. Defendant filed an answer on October 30, 2008, but also sought leave to appeal the court's ruling on whether plaintiff's complaint included a cause of action based upon slander. We denied leave to appeal by order dated November 18, 2008.

On December 8, 2008, plaintiff moved for summary judgment. The court denied the motion but found that the statements on the webpage were defamatory as a matter of law. Once discovery was completed, defendant filed a motion for summary judgment and plaintiff cross-moved for summary judgment.

On August 28, 2009, immediately following oral argument on the motions, the judge delivered an oral opinion granting summary judgment in favor of defendant and entered an order on that same date dismissing plaintiff's complaint with prejudice. The judge

determined that defendant's statements were defamatory as a matter of law and characterized the statements as defamatory per se since they accused plaintiff of having committed a criminal offense and of engaging in serious sexual misconduct. Nevertheless, the judge concluded that summary judgment dismissing the complaint was warranted because plaintiff, admittedly, had presented no proof of damages beyond his "individual subjective moral reactions which are absolutely understandable and rational and realistic and by themselves insufficient as a matter of law." The present appeal followed.

When reviewing a grant of summary judgment, we employ the same legal standards used by the motion judge. *Spring Creek Holding Co. v. Shinnihon U.S.A. Co.,* 399 *N.J.Super.* 158, 180, 943 *A.*2d 881 (App.Div.), *certif. denied,* 196 *N.J.* 85, 951 *A.*2d 1038 (2008); *Prudential Prop. & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div), *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998). First, we determine whether the moving party has demonstrated that there were no genuine disputes as to material facts, and then we decide whether the motion judge's application of the law was correct. *Atl. Mut. Ins. Co. v. Hillside Bottling Co., Inc.,* 387 *N.J.Super.* 224, 230–31, 903 *A.*2d 513 (App.Div.), *certif. denied,* 189 *N.J.* 104, 912 *A.*2d 1264 (2006). In so doing, we view the evidence in the light most favorable to the non-moving party and analyze whether the moving party was entitled to judgment as a matter of law. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 523, 529, 666 *A.*2d 146 (1995). We accord no deference to the motion judge's conclusions on issues of law, *Manalapan Realty, L.P., v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995), which we review de novo. *Spring Creek, supra,* 399 *N.J.Super.* at 180, 943 *A.*2d 881; *Dep't of Envtl. Prot. v. Kafil,* 395 *N.J.Super.* 597, 601, 930 *A.*2d 457 (App.Div.2007).

"In order to establish a prima facie case of defamation (whether denominated libel or slander), a plaintiff must show that defendant communicated to a third person a false statement about

plaintiff that tended to harm [the] plaintiff's reputation in the eyes of the community or to cause others to avoid plaintiff." *McLaughlin v. Rosanio*, 331 *N.J.Super.* 303, 312, 751 *A.*2d 1066 (App.Div. 2000). "Another component of a statement's defamatory nature—and thus an element of a prima facie case—is that [a] plaintiff must have been harmed by the alleged defamation." *Id.* at 313, 751 A.2d 1066 (citations omitted). It is this latter component that is at issue here.

Plaintiff contends that postings on the Internet are slander and because the postings accused him of engaging in criminal behavior (sexual misconduct), he is not required to prove actual injury to reputation. Rather, plaintiff urges that damages are presumed.

At the outset, we disagree that postings on the Internet are considered slander. In *Too Much Media, LLC v. Hale*, 413 *N.J.Super.* 135, 993 *A.*2d 845 (App.Div.), *certif. granted*, 203 *N.J.* 433, 3 *A.*3d 1224 (2010), an operator of an online website sought to avail herself of the protections under the New Jersey Shield Law, *N.J.S.A.* 2A:84A–21, for allegedly defamatory postings on her website by "invoking the newsperson's privilege." *Too Much Media, supra*, 413 *N.J.Super.* at 146, 993 *A.*2d 845. In addition to addressing whether the defendant was a "newsperson," we addressed the defendant's claim that the plaintiffs could not maintain a defamation action because the plaintiffs could not show pecuniary harm. *Id.* at 166, 993 *A.*2d 845. We first noted the *Restatement (Second) of Torts'* exposition that in determining whether a defamatory publication is libelous (written or printed) versus slanderous (oral), courts should consider the " 'wide area of dissemination, the fact that a record of the publication is made with some substantial degree of permanence and the deliberation and premeditation of the defamer' " as important factors " 'in determining whether a particular communication is to be treated as a libel rather than a slander.' " *Id.* at 167, 993 *A.*2d 845 (quoting *Restatement (Second) of Torts* § 568 (1977)). We stated that Internet postings, if defamatory, are considered libel, observing:

[The] [d]efendant's postings are written words published through a "mechanical device" (the computer) akin to the typewriter. As a general proposition, it may take more aforethought to type an [I]nternet posting than it does to blurt out spoken words. Also, unlike spoken words that evaporate, Internet postings have permanence, as the posts can remain on that particular site for an indefinite period and can easily be copied and forwarded. The name "the world wide web" is an indication that unlike spoken words, Internet postings have the widest distribution possible—globally. While the image of "town crier" standing and speaking on his soapbox has literary appeal, the Internet is more akin to the town crier handing out printed papers.

[*Ibid.*]

■ Hence, in our view, there is no question an Internet posting, if defamatory, implicates a cause of action for libel, not slander. Because plaintiff concedes that he presented no proof that any of his business or personal relationships have been disrupted by the defamatory postings, *Biondi v. Nassimos,* 300 *N.J.Super.* 148, 154, 692 *A.*2d 103 (App.Div.1997), the question remains whether plaintiff's damages may be presumed.

At common law, "[d]amage is presumed from the publication of a charge, the natural tendency of which is destructive of plaintiff's reputation." *Herrmann v. Newark Morning Ledger Co.,* 48 *N.J.Super.* 420, 441, 138 *A.*2d 61 (App.Div.1958) (citing *Leers v. Green,* 24 *N.J.* 239, 251, 131 *A.*2d 781 (1957)). It is the "[p]otential for harm, rather than actual harm [that] is the crux of the wrong." *Ibid. See Walsh v. Trenton Times, Inc.,* 124 *N.J.L.* 23, 24, 10 *A.*2d 740 (E. & A.1940) (holding that "in actions for libel and slander, substantial damages are recoverable as general damages, without proof of special damage, which must be averred and proved"); *see also Stickle v. Trimmer,* 50 *N.J.Super.* 518, 522, 143 *A.*2d 1 (App.Div.), *certif. denied,* 28 *N.J.* 57, 145 *A.*2d 168 (1958) (holding "[d]amage is presumed in the case of all defamatory libels, as distinguished from slanders").

In *Sisler v. Gannett Co., Inc.,* 104 *N.J.* 256, 281, 516 *A.*2d 1083 (1986), however, the Court, citing the decision in *Gertz v. Robert Welch, Inc.,* 418 *U.S.* 323, 94 *S.Ct.* 2997, 41 *L.Ed.*2d 789 (1974), and noting the "inherently amorphous quantification of libel damages[,]" stated that a plaintiff seeking to recover damages for

personal injury or mental anguish in a defamation suit "should offer some concrete proof that his reputation has been injured." The Court offered that this could be accomplished with evidence that an "existing relationship has been seriously disrupted" or with testimony from third parties that, from their perspective, the aggrieved person's reputation has been diminished. *Sisler, supra,* 104 *N.J.* at 281, 516 *A.*2d 1083. The Sisler Court, however, was dealing with an allegedly defamatory publication that involved a matter the Court described as "implicat[ing] a legitimate public interest with an attendant risk of publicity[.]" *Id.* at 279, 516 *A.*2d 1083.

Similarly, in *McLaughlin, supra,* we concluded that the plaintiff, a political candidate seeking to recover damages arising out of an allegedly defamatory radio commercial, a communications medium that we characterized as akin to libel, must adduce proof that "third parties lowered their estimation of the plaintiff and that he or she suffered emotional or pecuniary harm as a result." 331 *N.J.Super.* at 313, 751 *A.*2d 1066. Our focus, however, was primarily upon what we distilled from our examination of precedent, "a shift in favor of the rule that a plaintiff in a libel or slander action must adduce concrete proof that he or she was harmed, either by way of pecuniary losses or injury to his reputation." *Id.* at 319–20, 751 *A.*2d 1066.

Although both *Sisler* and *McLaughlin* reflect a trend away from the notion of presumed damages in defamation cases, our Supreme Court has not yet issued a dispositive ruling in this regard. Hence, the right to recover damages in an action premised upon libel without proof of actual harm remains the law in this jurisdiction. *Walsh, supra,* 124 *N.J.L.* at 24, 10 *A.*2d 740; *Stickle, supra,* 50 *N.J.Super.* at 522, 143 *A.*2d 1. To the extent one reads *Gertz, supra,* as eliminating presumed damages in libel actions, the decision in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 *U.S.* 749, 760–61, 105 *S.Ct.* 2939, 2946, 86 *L.Ed.*2d 593, 603–04 (1985), made clear that the *Gertz* restrictions

on presumed damages do not apply to all forms of allegedly defamatory publications:

> [C]ourts for centuries have allowed juries to presume that some damage occurred from many defamatory utterances and publications. *Restatement of Torts* § 568, Comment b, p. 162 (1938) (noting that Hale [1] announced that damages were to be presumed for libel as early as 1670). This rule furthers the state interest in providing remedies for defamation by ensuring that those remedies are effective. In light of the reduced constitutional value of speech involving no matters of public concern, we hold that the state interest adequately supports awards of presumed and punitive damages-even absent a showing of 'actual malice.' [7]

> [7] The dissent, purporting to apply the same balancing test that we do today, concludes that even speech on purely private matters is entitled to the protections of *Gertz* [,] [472 *U.S.* at 786, 105 *S.Ct.* at 2959, 86 *L.Ed.*2d at 620.] Its "balance," however, rests on a misinterpretation. In particular, the dissent finds language in *Gertz* that, it believes, shows the State's interest to be 'irrelevant.' [472 *U.S.* at 794, 105 *S.Ct.* at 2963, 86 *L.Ed.*2d at 625.] It is then an easy step for the dissent to say that the State's interest is outweighed by even the reduced First Amendment interest in private speech. *Gertz*, however, did not say that the state interest was "irrelevant" in absolute terms. Indeed, such a statement is belied by *Gertz* itself, for it held that presumed and punitive damages were available under some circumstances. 418 *U.S.* [] at 349, 94 *S.Ct.* [] at 3011[,] [41 *L.Ed.*2d at 811.] Rather, what the *Gertz* language indicates is that the State's interest is not substantial relative to the First Amendment interest in public speech. This language is thus irrelevant to today's decision.

In *Rocci v. Ecole Secondaire Macdonald–Cartier*, 165 *N.J.* 149, 160, 755 *A.*2d 583 (2000), the plaintiff, a school teacher who served as a chaperone on a joint European tour with students from her school and a Canadian school, commenced a defamation action after a colleague wrote to the plaintiff's school principal reporting that the plaintiff had engaged in inappropriate behavior in the presence of students while on the trip. The trial court granted the defendants' summary judgment motion, finding that the plaintiff failed to establish defamation or to prove damages. We upheld the trial court ruling to the extent it found that the plaintiff failed to prove damages. *Rocci v. Ecole Secondaire Macdonald–*

[1] Sir Matthew Hale, Chief Justice of the King's Bench 1671–1676 and author of "History of the Common Law of England." *The Columbia Encyclopedia*, (6th ed. 2008). Encyclopedia.com. (September 17, 2010). http://www.encyclopedia.com/doc/1E1–Hale–Sir.html

*Cartier,* 323 *N.J.Super.* 18, 21, 731 *A.*2d 1205 (App.Div.1999). Judge Lesemann dissented, concluding that the plaintiff's damages were presumed and "[t]hus, there was probably no need for [the] plaintiff even to assert in her complaint that she suffered general damages such as humiliation, mental anguish and suffering, since those [damages] are presumed to flow from a libel." *Id.* at 27–28, 731 *A.*2d 1205. On appeal as of right, based upon Judge Lesemann's dissent, the Court was presented with the opportunity to consider the viability of presumed damages, but declined to do so in view of its determination that the allegedly defamatory letter implicated a matter of public concern and that the plaintiff's "failure to allege any reputational or pecuniary harm preclude[d] her defamation claim." *Rocci, supra,* 165 *N.J.* at 160, 755 *A.*2d 583. The Court left, for future resolution, whether "the doctrine of presumed damages should apply to claims made by a private-figure plaintiff when no public interest is implicated." *Ibid.*

In short, for purposes of summary judgment, no one disputed that the defamatory statements attributed to defendant were defamatory. Thus, dismissal of the action at that stage—merely because plaintiff presented no proof of actual damage—provides defendant with a license to defame. If there has been a wrong, there should be a remedy, and the time-honored approach of allowing such a case to be decided by a jury, which may then assess a proper amount of damages based upon their experience and common sense, does not offend us. To hold otherwise would mean, as the United States Supreme Court explained in *Dun & Bradstreet, supra,* that

> a woman of impeccable character who was branded a "whore" by a jealous neighbor would have no effective recourse unless she could prove "actual malice" by clear and convincing evidence. This is not malice in the ordinary sense, but in the more demanding sense of New York Times. The dissent would, in effect, constitutionalize the entire common law of libel.
> [472 *U.S.* at 761 n. 7, 105 *S.Ct.* at 2946 n. 7, 86 *L.Ed.*2d at 604 n. 7.]

Or, as Justice O'Hern surmised in *Rocci, supra,* "[i]t would be a paradox that a written statement that subjected a teacher to social opprobrium (which case law defines as public condemnation, hatred, contempt, ridicule or disgrace ...) would not be actionable

when an oral statement would be actionable." 165 *N.J.* at 164–65, 755 *A.*2d 583 (internal citations and quotations omitted).

Reversed and remanded for trial.