■ DAMIR JURIC, Appellant, v LYNN BERGSTRAESSER, Respondent. [963 NYS2d 755]—

Mercure, J.P. Appeal from an order of the Supreme Court (Melkonian, J.), entered December 1, 2011 in Ulster County, which denied plaintiff's motion to set aside a verdict in favor of defendant.

The underlying facts of this case are more fully set forth in our prior decision, in which we reinstated plaintiff's complaint insofar as it stated a cause of action for breach of the implied covenant of trust and confidence inherent in the patient-physician relationship (44 AD3d 1186 [2007]). Defendant is the former family physician of plaintiff and his wife, Michelle Juric. After Juric reported an escalating pattern of verbal abuse by plaintiff and defendant observed plaintiff act in an overbearing manner toward Juric, defendant concluded that plaintiff possibly suffered from a severe, undiagnosed mental illness. When defendant and plaintiff disagreed over the treatment of Juric's unrelated medical problem, defendant attempted to broach the subject of plaintiff's marriage and emotional health with him directly; he then became offended, left the office abruptly and refused to see defendant again. In September 2004, Juric told defendant that she had taken defendant's advice and left

plaintiff after he threatened to physically assault both her and her father, and to take their daughter out of the country.[1]

Three months later, while on call for her practice group, defendant received a phone call at 11:30 p.m. from the emergency room physician at Benedictine Hospital, where plaintiff had presented with ear and chest pain. The emergency room physician allegedly stated that plaintiff was exhibiting "bizarre behavior," likely due to a "major psychiatric pathology," and asked whether defendant felt that anyone could be at risk from plaintiff because he was carrying a "large stack of gun magazines." Plaintiff also refused the emergency room physician's recommendation for admission and left the hospital against medical advice.

Although defendant consented to plaintiff's release from the hospital, she repeatedly called Juric the next day, and, after failing to reach her, contacted Juric's mother and was given Juric's cell phone number in the late afternoon. Defendant admittedly breached her duty of confidentiality and reported the details of the hospital visit to Juric. Plaintiff then commenced this action against defendant and the hospital, alleging that defendant's disclosure resulted in the denial of his visitation with his daughter for several months; after his complaint was dismissed, we reinstated it against defendant as noted above (*id.* at 1187-1188).

Following a jury trial, defendant's affirmative defense of justification was submitted to the jury. Specifically, Supreme Court charged that "[a] physician is justified in disclosing [a] confidence when plaintiff poses a serious and imminent danger to himself or another person . . . . To sustain her burden, defendant must show more than that she had grounds to be concerned about what might happen. Rather, she must demonstrate that she had a reasonable basis to believe and did believe, in fact, that plaintiff posed an actual and current threat to himself or to a third-party."[2] The jury returned a verdict for defendant, and Supreme Court subsequently denied plaintiff's motion pursuant to CPLR 4404 (a) to set aside the verdict. Plaintiff appeals, and we now reverse.

In our view, the record does not contain proof establishing that defendant had a reasonable basis to believe that plaintiff

---

1. We note that the parties agreed that certain hearsay evidence would be admissible to show the effect that it had on defendant. Moreover, although defendant was not aware of further developments in September 2004, Juric subsequently filed a criminal complaint against plaintiff, resulting in his being charged with harassment, and obtained an order of protection against plaintiff.

2. Neither party challenges Supreme Court's charge on appeal.

posed an actual, current, imminent threat to Juric as required to sustain her affirmative defense pursuant to Supreme Court's jury charge. Thus, even according defendant every favorable inference and considering the facts in the light most favorable to her (*see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]), we agree with plaintiff that there was "no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *see Wolfe v St. Clare's Hosp. of Schenectady*, 57 AD3d 1124, 1126 [2008]; *see also Oringer v Rotkin*, 162 AD2d 113, 114 [1990]). In addition, we conclude that the verdict was against the weight of the evidence—i.e., "the evidence so preponderate[d] in favor of . . . [plaintiff] that [the verdict] could not have been reached on any fair interpretation of the evidence" (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995] [internal quotation marks and citations omitted]; *see Strader v Ashley*, 61 AD3d 1244, 1245-1246 [2009], *lv dismissed* 13 NY3d 756 [2009]).

While defendant had grounds to be concerned about what might happen, she had no knowledge that plaintiff had ever harmed Juric or anyone else, did not witness plaintiff threaten Juric herself, had no knowledge of any of the details or circumstances of the alleged threats to Juric, was not told by the emergency room physician that plaintiff was violent or making threats, and consented to his release from the hospital. Nor did the chart prepared by the emergency room physician—who did not testify—mention any gun magazines, bizarre behavior or psychological issues. Indeed, defendant admitted that she agreed with the emergency room physician that there was insufficient evidence to admit plaintiff to the hospital involuntarily or to seek a psychiatric evaluation, and was aware that plaintiff's reason for refusing admission to the hospital was that he did not want to be admitted under defendant's care.

Moreover, we note that defendant was, at best, equivocal regarding how serious and immediate a threat plaintiff presented. She testified that she believed that he was "a potential danger," and that there was a "possibility" that Juric was "going to be dead," but that "the most common thing [in this situation] is probably nothing [would] happen." Defendant also testified that plaintiff "wasn't a danger at that moment," and "[i]f he was a danger at that exact moment, I am sure [the emergency room physician] would have called the psych consult." While defendant testified that she "believed that [plaintiff] *could* be a danger in the next couple of days"

(emphasis added), she did not notify law enforcement of her concerns. When she did speak with Juric the next afternoon, defendant had not had any contact with either plaintiff or Juric for three months prior to the breach and was unaware of the status of their relationship. Had defendant inquired of Juric prior to disclosing the details of plaintiff's hospital visit, defendant would have learned that Juric was already aware that it had occurred—having been advised of it by her sister—and also that Juric had taken steps for her protection.

Under these circumstances, we conclude that the evidence was legally insufficient to support defendant's affirmative defense of justification and so preponderated in plaintiff's favor that the jury could not have reached its conclusion based on a fair interpretation of it (*see Dentes v Mauser*, 91 AD3d 1143, 1144-1146 [2012], *lv denied* 19 NY3d 811 [2012]; *see also Runyon v Smith*, 163 NJ 439, 441-442, 749 A2d 852, 853-854 [2000]). Accordingly, plaintiff was entitled as a matter of law to a verdict in his favor on the issue of liability and the action must be remitted for a new trial, limited to the issue of damages.

Spain, McCarthy and Garry, JJ., concur. Ordered that the order is reversed, on the law and the facts, with costs, motion granted, verdict directed in plaintiff's favor, and matter remitted to the Supreme Court for a new trial on the issue of damages only.